### 55945. PERDUE v. THE STATE.

MCMURRAY, Judge.
Defendant was indicted separately for seven offenses of theft by deception and one of attempted theft by deception (criminal attempt to commit theft by deception). She was tried jointly and convicted on each of the charges. She received fines of $1,000 each as to four of the convictions and was sentenced to a term of one year as to four others, three of which were to be served consecutively; that is, a total of four years to be served and to pay a total fine of $4,000. Her motion for new trial was duly filed, thereafter amended and denied. Defendant appeals. *Held:*

1. As to the victim Shirley Searcy, defendant was accused of obtaining money in the amount of $30 from her with the intention of depriving the owner of said property by creating an impression of an existing fact that said money was needed and required so that she would be hired and allowed to hold a job, said fact being false and the

defendant knew and believed same to be false. The testimony showed that Shirley's sister Mary was employed in the CETA program[1] of which the defendant was a counselor having authority to employ and supervise persons in the CETA program. Mary quit the job for one in the mill. Her mother approached the defendant to see if her daughter Shirley could get Mary's old job. The defendant told her, "they are not hiring, and if we pull Mary's name out of the computer, that will be the end of this job,. . . here's what we can do, we can let Shirley work in Mary's place, but she will have to pay me $15 out of her check each week." She stated the defendant told her, "the reason she was doing this was because she was sticking her neck out, and I could lose my job so I'll have to get something for this." The evidence did not disclose that the defendant was not "sticking her neck out" and the witness later testified that she didn't get a receipt for the money and "[y]ou don't give a receipt when you are ripping off people." The evidence here fails to disclose that the defendant intentionally deceived by creating or confirming another's impression "of an existing fact or past event which is false and which the accused knows or believes to be false." Nor does the evidence show any other type of intentional deceit as described in Code § 26-1803. The facts here involve theft, but not theft by deception. See 18 USCA, § 665. The evidence as to this charge was insufficient to support the verdict of guilty of theft by deception.

2. Felicia Anderson paid the defendant $4.50 to keep her job because as Felicia so testified the defendant said "two members out of the same household couldn't work." This witness also testified that she paid defendant "a dollar for supplies and 50 cents for my social security card." Other evidence disclosed that neither supplies nor verification of social security card was necessary. While the payment of the $4.50 may not have amounted to theft by deception, nevertheless the collection of the $1.50

---

[1]Comprehensive Employment and Training Act of 1973, and because of the age of the students here involved, it is believed to be a youth program. See 29 USCA, § 874.

amounted to intentional deception which created or confirmed another's impression of an existing fact "which is false and which the accused knows or believes to be false," inasmuch as the defendant was not authorized or required to collect for supplies or collect money to verify the social security number of an employee. The evidence here was sufficient to support the conviction of theft by deception as to the taking of the $1.50 from Felicia Anderson.

3. Henry Anderson, Jr., the brother of Felicia Anderson, testified that he was told the same information as his sister relative to the $4.50 "[t]o keep my job" and he so paid her the $4.50 to keep his job. He also testified that he paid defendant $1.25 for a "work permit." He also testified that the money he gave her he thought "was for supplies or something like that." The defendant's immediate supervisor testified that none of the people involved with the CETA program were authorized to demand or receive money as a prerequisite to be allowed to participate in the program. He later testified when he was recalled as a witness that students of the CETA program were not required to pay for any items when they came to work on the program. The testimony as to the $4.50 this victim had to pay may not have amounted to theft by deception, but the payment of money ($1.25) for the "work permit" amounted to theft by deception since it created or confirmed the impression by the victim "of an existing fact or past event which is false" and the defendant knew or believed it to be false.

4. As to the victim Loretta Caldwell, she paid the defendant $15 "[f]or a trophy." She did not believe the defendant was going to permanently keep her money but was going to give it back to her at the end of the program by awarding her a trophy as a "superworker." The evidence fails to show that the defendant intentionally deceived the victim by creating or confirming an impression of an existing fact or past event which is false and which the defendant knows or believes to be false. The evidence here was insufficient to support the conviction of theft by deception of this charge.

5. As to the victim Tina Buckle, whose brother also worked in the CETA program, the defendant allegedly

asked her to pay $4.56 a week "to keep my job" and this witness testified that defendant stated if she didn't pay the $4.56 a week "I would lose my job." This victim also testified that she was required to pay "a dollar for supplies." While the testimony as to the $4.56 a week to keep her job may not have amounted to theft by deception, this victim was deceived into paying a dollar for supplies, which was not necessary or required by the program, and it showed an intentional deception of the victim that she was required "to pay a dollar for supplies," when in effect no such requirement was required by the CETA program.

6. The brother of Tina Buckle, one Jerome Buckle, who also worked in the CETA program, testified that he was told by the defendant that he must give her $4.56 a week or he "couldn't stay on the program," because there "couldn't be two working in the same household"; and she would take our jobs (the witness Jerome and his sister Tina). He likewise testified that he paid her "[a] dollar for supplies." This evidence also was sufficient to support a conviction of theft by deception as to the dollar for supplies even though the $4.56 may not have amounted to theft by deception.

7. The alleged victim, Martha Cox, another employee in the CETA program, paid the defendant $20 one time for an "award." This witness likewise testified that she did not believe that the money was going to be used for something other than awards and that the defendant had never stolen anything from her. For the reasons stated above in Division 4, the testimony as to the victim Cox was insufficient to support a conviction of theft by deception.

8. There was testimony that the defendant sought to collect $20 from one Vera Robinson "for a record book" but she refused to pay defendant the $20, whereupon she was told that it would be $40 next week. Defendant allegedly told this prospective victim that if she didn't pay it she would lose her job, first telling her "she would cut me from 40 to 25 hours. . ." When she failed to pay the $20 the defendant told her "she would have to terminate me as of today. . ." She was not terminated but she was put on a reduced part time basis, and when she reported all of the above to others the entire scheme to defraud was

uncovered. The testimony by this intended victim fails to show attempted theft by deception as the defendant did not attempt to intentionally deceive her by creating or confirming an impression of an existing fact or past event which was false and which the accused knew or believed to be false. The evidence as to Vera Robinson was insufficient to prove a case of attempted theft by deception.

9. Other enumerations of error complain that the trial court in examining witnesses expressed and intimated an opinion about the guilt of the defendant. However, only one objection and motion for mistrial was made as to the various times that the court, during the trial, undertook to examine the various witnesses wherein he allegedly expressed an opinion about the case in general. In *Wilson v. State,* 229 Ga. 224 (2) (190 SE2d 78), the Supreme Court held, citing earlier cases, that a trial judge may propound questions to any witnesses for the purpose of ascertaining the truth, "within his discretion," so long as the court does not express or intimate an opinion "on the facts of the case, or as to what has or has not been proved, or the examination takes such course as to become argumentative in character." Therein (the last quoted language) lies the test as to whether or not the court commits error in questioning witnesses and taking an active part in the trial as a participant instead of a mere referee. In the case sub judice as to the questioning of the witness by the court to which defendant formerly objected, the court merely asked the witness for clarification as to the policy of the CETA program as to whether it was proper or improper for a supervisor to ask for donations of the employees to hold a job. This question did go to the heart of the matter as to whether or not any theft was present, but this court cannot say it expressed or intimated an opinion as to guilt, as to what had or had not been proved, or was argumentative; and the tone of voice of the trial judge is not reviewable. *Williams v. State,* 170 Ga. 886 (3) (154 SE 363); *Wilson v. State,* 229 Ga. 224 (2), supra. Since no other objection or motion for mistrial was made to the various other instances where the trial court had actively participated in the examination of witnesses, and made statements in a colloquy to counsel, no ruling is

made thereon as to whether or not the trial court violated Code § 81-1104 or improperly or unfairly injected himself into the case. See *Ezzard v. State,* 229 Ga. 465 (2) (192 SE2d 374) and cits.

10. The court properly charged the substantive law of theft by deception which was the crime charged by the various indictments, as there was evidence authorizing such a charge. There is no merit in this complaint.

However, for the various reasons stated in Divisions 1, 4, 7 and 8, a reversal is necessary as to these offenses as the evidence did not support the verdict of guilty even if the evidence may have shown other crimes for which the defendant was not indicted.

*Judgment affirmed in part and reversed in part. Quillian, P. J., and Webb, J., concur.*

ARGUED JUNE 7, 1978 — DECIDED OCTOBER 2, 1978 — REHEARING DENIED OCTOBER 23, 1978.

*Irwin M. Levine,* for appellant.

*Johnnie L. Caldwell, Jr., District Attorney, Paschal A. English, Jr., J. David Fowler, Assistant District Attorneys,* for appellee.