## 41970. MILHOUSE v. THE STATE.
(329 SE2d 490)

BELL, Justice.

David Milhouse was convicted of the malice murder of Sandy Moore and the possession of a firearm during the commission of a crime. He received a life sentence and a five-year consecutive sentence, respectively.[1]

Milhouse lived with his girl friend, Velma Gloster, for five years, during which time they had two children. The couple, who never married, separated in September 1984 because of Milhouse's failure to keep a job and help support the family.

Before her separation from Milhouse, Gloster had become friends with another man, the victim, with whom she worked. Milhouse was upset by their relationship. After Gloster left Milhouse, she moved in with Moore and his family. Thereafter, Milhouse asked Gloster on several occasions to return to him. At trial, Gloster testified that, one evening in October 1984, Milhouse fired a shotgun blast through the open bedroom window of the Moore house. Before Milhouse fired, Gloster saw him walking down the street, and heard him say, "Don't either one of ya'll move." No one was injured by the blast. Gloster also testified that Milhouse had visited her at work, and had threatened to kill her if she did not return to him.

At approximately 10:00 a.m. on October 25, Milhouse drove to the Moores' house. He told Gloster that he was leaving town and wanted to see the children. Gloster told him to come back in approximately 30 minutes to pick up the children, but he did not return.

At approximately 1:00 p.m., Gloster prepared to take her children to the baby-sitter and go to work. The victim's father drove her to the baby-sitter, and while en route they passed Milhouse, who was sitting in his car by the side of the road. Shortly after she arrived at the baby-sitter, Milhouse arrived. He again asked her to return to him, but she refused.

Gloster left the baby-sitter's house and began to walk to work with Yvonne Stringer, a co-worker. After a few blocks, Stringer real-

---

[1] The crime was committed on October 25, 1984. Milhouse was indicted on November 20, 1984, and the Thomas County jury returned its verdict of guilty as to both counts on December 11, 1984. The transcript of evidence was certified by the court reporter on January 8, 1985. The notice of appeal was filed on January 7, 1985. The record was docketed in this court on January 17, 1985. The appeal was submitted for decision without oral argument on March 1, 1985.

ized that she had left at home something that she needed for work. She returned home while Gloster waited. Milhouse drove up beside her, got out of the car, and asked her to return to him. While he was talking to Gloster, Milhouse saw that Sandy Moore was walking towards them and said, "There comes your little punk."

After Moore reached Gloster and Milhouse, Milhouse asked Gloster if she was going to stop seeing Moore. When Gloster refused to do so, Milhouse walked back to his car, took out a 12 gauge, single barrel shotgun, and said, "Well, I'm going to kill both of ya'll right here." Milhouse pointed the shotgun at Moore, pulled the hammer back, and fired from a distance of eight to ten feet, striking Moore in the head. Moore had been carrying a night stick that was approximately two feet long, but apparently did not threaten Milhouse with it.

After the shooting Gloster ran into the nearby house of Lewis Hardy and hid in a bedroom closet. Milhouse followed Gloster onto the porch of the Hardy residence, but was denied entrance into the home by Hardy. At this point he got into his car and drove away.

At approximately 2:00 p.m, emergency medical technicians and police officers arrived at the scene of the shooting, to find Moore dead. Milhouse surrendered to the police later in the day, and took officers to the location where he had hidden the shotgun. Milhouse gave two statements to the police, in both of which he admitted that he threatened and then shot the victim.

Dr. William McCollum, the pathologist who performed the postmortem examination on Moore, testified that the cause of death was a gunshot wound to the head, measuring approximately one inch in diameter. Dr. James A. Howard, a forensic chemist with the Georgia State Crime Lab, testified that shotgun pellets recovered from Moore's body were fired from the shotgun recovered from Milhouse. He also testified that the shotgun would not discharge accidentally; rather, it would take deliberate action to load and fire the shotgun.

1. In his first enumeration of error, Milhouse contends that the evidence was insufficient to support his conviction of murder. We disagree. Viewing the evidence in a light most favorable to the jury's verdict, we find it was sufficient to enable any rational trier of fact to find the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. As his second and third enumerations of error, Milhouse contends that the trial judge's voice inflections and facial expressions during his reading of the jury charge on voluntary manslaughter were such as to constitute an expression of opinion which reflected the trial judge's bias against him. Milhouse further contends that the trial court erred in not recharging on voluntary manslaughter.

Both this court and the Court of Appeals have held that a trial

judge's vocal emphasis is not reviewable on appeal. *Williams v. State,* 170 Ga. 886 (3) (154 SE 363) (1930); *Wilson v. State,* 229 Ga. 224 (2) (190 SE2d 78) (1972). *Whiddon v. State,* 160 Ga. App. 777 (3) (287 SE2d 114) (1982); *Perdue v. State,* 147 Ga. App. 648 (9) (249 SE2d 657) (1978). However, neither court apparently has had the opportunity to review the record of a case wherein an attorney, believing that the trial court has prejudiced his client's case by its tone of voice or demeanor, has made a record in the trial court that supported his contentions. In addition, we can foresee that, in certain rare instances, a trial court's tone of voice or demeanor might prejudice a defendant, yet escape review if our traditional rule were too strictly enforced. Therefore, we now qualify our rule that a trial judge's vocal emphasis is not reviewable on appeal, by holding that an appellant's contentions regarding derogatory and prejudicial vocal emphasis, facial expressions, or other bodily demeanor on the part of a trial judge will be reviewable on appeal if the appellant has completed a record which will enable an appellate court to review his contentions.

The question, then, is what constitutes a reviewable record. At a minimum, it must demonstrate the demeanor or conduct of the trial judge that is in question, a timely objection thereto, and how the rights of the complaining party were prejudiced. See 4A CJS 555, Appeal and Error, § 714. An attorney could attempt to make such a record, for instance, by calling as witnesses people who were in the courtroom at the time of the incident in question, and questioning them as to the trial judge's demeanor.

In the instant case, Milhouse's counsel simply stated that "I do have an objection to the charge on voluntary manslaughter, not to the wording that you gave, but to certain enunciation that you gave." Milhouse's attorney neither attempted to specify what "enunciations" might have prejudiced his client's case, nor called any witnesses who were present to testify as to their observations of the trial judge's tone of voice or demeanor while reading the charge. Under these circumstances, Milhouse's second and third enumerations of error will not be considered.

*Judgment affirmed. All the Justices concur, except Marshall, P. J., who concurs in the judgment only.*

DECIDED MAY 10, 1985.

*Whitehurst, Cohen & Blackburn, C. Michael Bozeman, Joseph Poller,* for appellant.

*H. Lamar Cole, District Attorney, James E. Hardy, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie*

*Snelling, Jr., Senior Attorney,* for appellee.