## A00A1199. PEAKE v. THE STATE.
(545 SE2d 309)

PHIPPS, Judge.

James Peake, Sr. was convicted of burglary, possession of tools for the commission of burglary, possession of a firearm during the commission of a felony, attempting to elude, and two counts of aggravated assault on a police officer. On appeal, Peake raises two issues: (1) whether the trial court improperly commented on the jury's recharge question and erred in recharging the jury on conspiracy without also recharging on mere presence and mere association; and (2) whether the prosecution violated his right to due process by presenting testimony from a co-defendant that it knew or should have known was perjured. We affirm because we find that the court made no improper comment to the jury and did not err in recharging solely on conspiracy and that the record does not show that the prosecution presented testimony which it knew or should have known was perjured.

Peake's charges arise out of the burglary of a First Union automated teller machine (ATM) in Cobb County. A Cobb County sheriff's deputy responded to an alarm at the bank and found Peake sitting in the driver's seat of a van parked next to the ATM. While the officer was questioning Peake, an accomplice wearing a mask and carrying a satchel opened the van's side door. The officer saw that the ATM had been opened and drew his weapon. A gunfight ensued, with shots being fired by Peake's accomplices, Joseph Kenner and Nathan O'Hannon. One bullet struck the officer on his magazine pouch but did not injure him. Peake and O'Hannon fled the scene in the van and were captured after a high-speed chase. Kenner had been shot several times in the gunfight and was arrested at the scene.

At trial, Peake testified that Kenner had told him that he had been contracted to repair the ATM. He said that he did not know Kenner was breaking into it.

1. The court charged the jury on conspiracy at the State's request and on mere presence and mere association at Peake's request. During its deliberations, the jury sent a note to the judge which stated, "Question: The proper wording on the law in reference to the acts of one are the acts of all." Believing that the question referred to a particular passage in the conspiracy instruction, the judge responded to the jury's question by rereading the instruction on conspiracy, which included the following:

> Where persons associate themselves in an unlawful enterprise, any act done to further the unlawful enterprise by any party to the conspiracy is in legal contemplation the act of them all. However, each is responsible for the acts of others

only insofar as such acts are naturally or necessarily done to further the conspiracy.

Peake asserts that by rereading only the instruction on conspiracy, the court overemphasized it and expressed an opinion that Peake was not merely present at the scene or merely associated with his co-defendants.

> Where a jury, which has been fully and properly charged, requests a recharge on a specific question, it is within the discretion of the trial court whether to recharge entirely or to recharge only on the specific question. [Cits.] It is not error to recharge only on the specific question so long as the recharge " 'taken alone (does not) leave an erroneous impression in the minds of the jury.' " [Cit.][1]

"To determine whether a recharge is erroneous, we examine the charge as a whole, including both the initial charge and the recharge. [Cit.]"[2]

Here, the judge instructed the jury to consider the entire charge that had been given to it earlier and stated that the recharge was not intended to emphasize the charge on conspiracy. The judge stated that he was rereading only that charge because he believed the jury's question pertained only to that charge. He added that he would be willing to reread any portion of the charge or the entire charge if the jury wished. After rereading the conspiracy instruction, the judge asked the foreman if the recharge had answered the jury's question. He responded that it had.

We conclude that the recharge was proper and that it did not overemphasize the State's theory of the case, did not contain a comment on the evidence, and did not leave an erroneous impression in the minds of the jurors.[3]

2. Peake contends that the State knowingly introduced perjured testimony from Kenner. Kenner testified that he and Peake had been forced by O'Hannon to participate in the burglary. He offered little explanation of how O'Hannon had forced them to participate. He testified that the following occurred. Several days before the burglary, he, O'Hannon, and Peake had gone to several ATMs and had discussed robbing one. On the day in question, Peake acted as driver and lookout for the criminal enterprise. Peake was armed with a .45 caliber pistol and communicated with Kenner and O'Hannon while

---

[1] *Cloyd v. State*, 237 Ga. App. 608, 610 (3) (516 SE2d 103) (1999).
[2] Id.
[3] See id.

they were inside the ATM. Peake informed them of how much time they had spent inside the ATM, told them when the officer arrived, and then told them that the officer was "getting on the radio."

Peake contends that Kenner's testimony was fraught with internal inconsistencies and was contradicted by physical evidence and by the testimony of other State's witnesses, principally that of the officer who discovered the burglary. He contends that Kenner's pretrial statements had put the State on notice that Kenner's testimony would be contradictory and inconsistent.

> A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. [Cits.] If the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury, such a conviction may require reversal under the above standard. [Cit.][4]

The record does not demonstrate that the State allowed Kenner to give testimony material to Peake's case which it knew or should have known was perjured.[5] The record does indicate that Kenner's testimony regarding his own role in the burglary was inconsistent with other evidence presented by the State and was implausible to some degree. However, the issue in this trial was Peake's culpability, not Kenner's. Nothing in the record clearly demonstrates that Kenner was untruthful about Peake's knowledge of the conspiracy and participation in it.[6] We cannot say that Kenner's testimony "in every material part [was] purest fabrication."[7]

Certainly, *any* fabrication in Kenner's testimony was relevant to his credibility. But, "[t]his is not a situation wherein the [S]tate allowed a witness to give false testimony which defense counsel had no means of correcting."[8] Peake does not claim that the State had failed to turn over materials or evidence through which he could have shown the jury any possible untruth in Kenner's testimony.[9]

We find no merit in this contention.

---

[4] (Punctuation omitted.) *Mondy v. State*, 229 Ga. App. 311, 313 (2) (494 SE2d 176) (1997).

[5] See *Kitchens v. State*, 160 Ga. App. 492, 493 (1) (287 SE2d 316) (1981) (materiality standard).

[6] See *Allen v. State*, 222 Ga. App. 492 (474 SE2d 698) (1996) (trial court properly denied motion to strike testimony of accomplices who gave inconsistent accounts of burglary, each minimizing their role).

[7] *Fugitt v. State*, 251 Ga. 451, 452 (1) (307 SE2d 471) (1983).

[8] *Gober v. State*, 203 Ga. App. 5, 7 (4) (416 SE2d 292) (1992).

[9] See id.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 28, 2000 —
RECONSIDERATION DENIED DECEMBER 15, 2000 — 

*James S. Lewis*, for appellant.

*Patrick H. Head, District Attorney, Maria B. Golick, Thomas A. Cole, Assistant District Attorneys*, for appellee.