## A03A0175. ALLISON v. THE STATE.
### (577 SE2d 845)

PHIPPS, Judge.

An indictment was returned in the DeKalb Superior Court charging Timothy Allison, Randall Parker, and Eddra Hamilton with, among other things, murdering Dennis Bannister during the commission of certain felonies, committing an aggravated assault upon Anthony Ross, and conspiring to commit the offense of trafficking in cocaine. The indictment also charged Ross with trafficking in cocaine and possession of cocaine with intent to distribute.

Allison and Parker were tried jointly. Parker was convicted of voluntary manslaughter, aggravated assault, and conspiracy to commit trafficking in cocaine. Allison was convicted of conspiracy to commit trafficking in cocaine. He was sentenced to 30 years. He appeals. Among other things, he contends that the prosecuting attorney was allowed to elicit testimony from prosecution witness Ross under circumstances which denied Allison his constitutional right of confrontation. Finding no reversible error, we affirm.

The State's evidence showed that Ross had cocaine for sale. Bannister asked Hamilton to find a buyer, and Hamilton arranged for Parker to make the purchase. Agreement was reached that Ross would sell Parker one-half kilo of cocaine for $12,500 at a restaurant in South DeKalb Mall. Parker, who was in possession of about $14,000, arrived with Hamilton and Allison in one vehicle; Bannister and Ross arrived with Taheed Mateen in another vehicle. Ross wanted the buy to be made in the bathroom of the restaurant, but Parker refused. So it was agreed that the group would proceed to a motel where Bannister had a room and conclude the deal there. But after they arrived at the motel, more problems arose, and agreement was then reached to use Bannister's residence at Whitehall Forest Court condominiums as the locus for the sale. Additional problems, however, arose there, and the frustration level escalated to a point at which weapons were brandished and gunfire erupted.

Bannister was killed, and Ross sustained crippling injuries. According to Hamilton, the gunfire began when Allison pulled a gun and stuck it in Bannister's back. Mateen testified that he fired a gun into the air upon seeing Allison grab Bannister. According to Mateen, another shot then rang out, whereupon Bannister slumped and Parker grabbed Ross.

After Allison, Parker, and Hamilton fled the scene, a neighbor of

Bannister's approached Ross and offered to assist in secreting any drugs in his possession. Ross indicated that he had drugs in his jacket, so the neighbor took the jacket and put it in the condominium where Bannister was residing. One package containing cocaine was found inside the jacket; another package containing cocaine was found inside Ross's car, which had been left at the motel. The package in the jacket contained cocaine weighing 486 grams with a purity of 62 percent. The package in the car contained cocaine weighing 474 grams with a purity of 55 percent.

Ross was called to the stand by the State. He refused to testify because of the pending charges against him, even though he was informed that the State had moved for an order granting him immunity from prosecution. Over objection, the prosecuting attorney was allowed to inform Ross in the presence of the jury that he no longer had a constitutional right to refuse to testify. The prosecuting attorney then stated that she had no further questions.

On cross-examination by Allison's counsel, Ross then testified that Allison was not in any way involved in the shooting and was not even present at the scene. On cross-examination by Parker's attorney, Ross testified that Hamilton had shot him.

On redirect examination by the prosecuting attorney, Ross identified Parker as the other person who had shot him, and he identified Hamilton as the person who had killed Bannister. The prosecutor subsequently asked Ross whether he remembered giving a statement to police while he was in the hospital. Ross responded that he had been heavily sedated and did not remember. The prosecutor then asked Ross whether he recalled telling police that he had picked up Bannister earlier in the evening, that Bannister had suggested that Hamilton was going to pay for the cocaine with counterfeit money, and that he (Ross) and Bannister later went to the motel and then to South DeKalb Mall. When Ross responded that he did not recall making any of those statements, the prosecutor asked him whether, in fact, he had gone to the motel and mall that evening. After Ross responded in the affirmative, the prosecutor asked about Allison's presence at the mall. Allison's attorney objected, and he moved for a mistrial on the ground that Ross had not made any statement to police concerning Allison. The prosecutor responded that he was making direct inquiry about Ross's activities that evening and not about the contents of his statement to police. The trial court denied the motion for mistrial, and Ross then testified both on redirect examination by the prosecutor and on recross by Allison's counsel that he had not seen Allison at any time that evening.

1. Allison first contends that his conviction must be reversed because the State failed to prove venue in DeKalb County beyond a reasonable doubt.

"Our Georgia Constitution requires that venue in all criminal cases must be laid in the county in which the crime was allegedly committed."[1] In *Jones v. State*,[2] our Supreme Court recognized that "[v]enue is a jurisdictional fact, and is an essential element in proving that one is guilty of the crime charged. 'Like every other material allegation in the indictment, (venue) must be proved (by the prosecution) beyond a reasonable doubt.'"[3]

Prior to *Jones*, the Supreme Court had recognized an exception to the rule requiring venue to be proved beyond a reasonable doubt. Under the exception, slight evidence was sufficient to prove venue when the evidence of venue was not conflicting and when no challenge to venue was raised at trial.[4] The Court in *Jones* disapproved this exception, on the ground that venue is challenged whenever a criminal defendant pleads not guilty and is put on trial. *Jones*, however, further recognized that "[t]he State may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence."[5] The defendant in *Jones* was tried in Fulton County. As circumstantial proof of venue, the State relied on evidence showing that the City of Atlanta Police Department investigated the crime. The Court found this evidence insufficient, because the record revealed that City of Atlanta police officers patrol both Fulton and DeKalb Counties.[6]

The facts in *Chapman v. State*[7] bore some similarity to those in *Jones*, as the defendant in *Chapman* was tried in Fulton County, the City of Atlanta Police Department investigated the crime, and the question was whether there was adequate circumstantial evidence of venue in Fulton County. The Supreme Court in *Chapman* answered that question in the affirmative, noting that the investigating police officer testified that he was employed as a " 'City of Atlanta police officer, Fulton County, Georgia.' "[8] In addition, evidence showed that the victim's body came to the Fulton County Medical Examiner's offices. "In light of the well-settled principle that public officials are believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise,"[9] the Supreme Court held that the jury was authorized to find that the police officer (and the medical examiner) acted within their territo-

---

[1] (Footnote omitted.) *Jones v. State*, 272 Ga. 900, 901 (2) (537 SE2d 80) (2000).
[2] Id.
[3] (Footnotes omitted.) Id.
[4] Id. at 902.
[5] Id. at 902-903.
[6] Id. at 903 (3).
[7] 275 Ga. 314 (565 SE2d 442) (2002).
[8] Id. at 317 (4).
[9] (Citations omitted.) Id.

rial jurisdiction. Viewing the evidence in a light most favorable to support the verdict, the Court in *Chapman* held that the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in Fulton County.[10]

In this case, the evidence showed that the DeKalb County police investigated the subject crimes, and that the Chief Medical Examiner for DeKalb County performed the autopsy on Bannister. Under *Chapman*, this proof of venue was sufficient.

2. Allison next contends that his conviction must be reversed because the indictment charged him with conspiring to commit trafficking in cocaine by agreeing to take possession of more than 400 grams of pure cocaine, whereas the evidence at trial showed that the cocaine that Ross was going to sell to Parker, though weighing more than 400 grams, was a cocaine mixture.

Georgia's cocaine trafficking statute "defines two methods of committing the crime of trafficking in cocaine, one dealing with pure cocaine, and the other dealing with mixtures containing cocaine. . . . Under the statute, one may be guilty by possessing 28 or more grams of pure cocaine, or by possessing 28 or more grams of a mixture with a purity of 10 percent or more of cocaine."[11] Where the indictment alleges that the crime was committed by one method, the State is required to prove commission of the crime by that particular method.[12]

Allison, however, was not charged with the substantive offense of trafficking in cocaine; he was charged with conspiring to commit that offense. Under Georgia law, the conspiracy charge required evidence that Allison "conspired with others to knowingly possess twenty-eight grams or more of cocaine and that one of the conspirators took an overt act to this end."[13] More specifically, the indictment charged Allison with conspiracy to commit trafficking in cocaine by agreeing with Bannister to take possession of more than 400 grams of cocaine from Ross and by attending a meeting with Ross at the South DeKalb Mall and at Whitehall Forest Court condominiums for

---

[10] Id. at 317-318.

[11] *Byers v. State*, 204 Ga. App. 552, 554-555 (3) (420 SE2d 23) (1992); OCGA § 16-13-31 (a) (1). The mandatory minimum term of imprisonment for the crime is either ten, fifteen, or twenty-five years depending upon whether the quantity of cocaine or mixture involved is less than 200 grams, less than 400 grams, or 400 grams or more. OCGA § 16-13-31 (a) (1) (A), (B), (C). Under OCGA § 16-13-31 (g), the maximum term of imprisonment for trafficking in cocaine is 30 years regardless of the amount. Under OCGA § 16-13-33, any person convicted of conspiring to commit any violation of the Georgia Controlled Substances Act may be given the maximum sentence of imprisonment for the offense which was the object of the conspiracy. Allison was given the maximum 30-year sentence. Therefore, the mandatory minimum sentence to which he was subject has become irrelevant.

[12] *Daniel v. State*, 251 Ga. App. 792, 793 (555 SE2d 154) (2001).

[13] (Footnote omitted.) *Smith v. State*, 253 Ga. App. 131, 133 (1) (558 SE2d 455) (2001).

the purpose of taking possession of the cocaine. The State submitted evidence proving the allegations of the indictment in accordance with the requirements of Georgia law. Proof of all of the elements of the substantive offense was not required.[14]

3. Based on the language of the indictment, Allison contends that the trial court erred by charging the jury that the offense of trafficking in cocaine may be committed by possession of pure cocaine as well as a mixture.

The court correctly charged the jury as to the allegations of the indictment and that the burden rested on the State to prove every material allegation beyond a reasonable doubt. The court's charge on both methods of committing the substantive offense of trafficking in cocaine did not give rise to a "reasonable probability" that the jury convicted Allison of conspiracy to commit the offense in a manner not charged in the indictment.[15]

4. Allison contends that his conviction of conspiracy to commit trafficking in cocaine must be reversed because the court's jury instruction on conspiracy to possess cocaine, as a lesser included offense, was an improper sequential charge.

As authority in support of his contention, Allison relies on *Cantrell v. State*.[16] Allison's reliance on *Cantrell* is misplaced. In *Cantrell*, our Supreme Court condemned the practice of requiring juries to unanimously agree on a greater offense before considering a lesser included offense.[17] Here, the jury was instructed to consider the lesser offense of possession of cocaine only if they did not believe beyond a reasonable doubt that defendants were guilty of conspiracy to traffic in cocaine. "Such a sequential charge is acceptable so long as the trial court does not insist upon unanimity with regard to the jury's decision on the greater offense. [Cits.]"[18]

5. Allison contends that he was denied his constitutional right to confrontation because Ross refused to answer questions about the drug charges.

As authority in support of this claim, Allison relies on a line of cases represented by *Greenwood v. State*.[19] These cases condemn a procedure in which the trial court permits the State to call any witness (even an immunized one) who has notified the court and counsel

---

[14] *Williams v. State*, 214 Ga. App. 280, 282 (5) (447 SE2d 676) (1994), aff'd on other grounds, 265 Ga. 471 (457 SE2d 665) (1995).

[15] See generally *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999); *Moore v. State*, 207 Ga. App. 892, 894 (2) (429 SE2d 335) (1993).

[16] 266 Ga. 700 (469 SE2d 660) (1996).

[17] *Kunselman v. State*, 232 Ga. App. 323, 324 (1) (501 SE2d 834) (1998).

[18] *Yaeger v. State*, 274 Ga. 216, 219 (3) (552 SE2d 809) (2001); see *Kunselman v. State*, supra.

[19] 203 Ga. App. 901, 902 (1) (418 SE2d 160) (1992).

that he will not answer any question and ask leading questions, predicated on the witness's prior statements, which suggest the defendant's guilt of the crimes charged.

In this case, the prosecuting attorney ceased questioning the witness after he refused to testify. Allison's attorney then elicited testimony from the witness that exculpated Allison. Although the prosecutor later used the procedure condemned in *Greenwood* to inform the jury that prior to trial the witness had told the police that he, Bannister, and Hamilton were involved in an underlying drug deal, the prosecutor had abandoned this procedure by the time he began asking about Allison's involvement in the crimes. The witness did not refuse to respond to questioning, but rather testified that Allison was not involved. Allison's constitutional right to confront witnesses testifying "against" him was in no way violated.[20]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 7, 2003 —
RECONSIDERATION DENIED FEBRUARY 20, 2003 — 

*Brian Steel*, for appellant.

*J. Tom Morgan, District Attorney, Sheila A. Connors, Barbara B. Conroy, Rosemary W. Brewer, Assistant District Attorneys*, for appellee.

---

[20] See Ga. Const. 1983, Art. I, Sec. I, Par. XIV (every person charged with an offense against state laws shall be confronted with the witnesses testifying against such person); U. S. Const., Amend. VI (in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him).