## A05A0446. PARKER v. THE STATE.
### (617 SE2d 625)

ADAMS, Judge.

Randall Parker appeals following the denial of his motion for new trial.

The evidence in this case showed that Parker, Timothy Allison, Eddra Hamilton, Anthony Ross, Tauheed Mateen and Dennis Bannister were involved in a drug deal involving a large quantity of cocaine. Parker was the buyer, accompanied by Allison and Hamilton, and Ross was the seller, accompanied by Mateen and Bannister. An argument broke out about the deal, and gunshots were fired. Bannister was shot and killed and Ross was shot and injured.[1]

Parker, Allison and Hamilton were charged with two counts of felony murder in connection with the death of Dennis Bannister (Count 1 alleging aggravated assault as the underlying felony and Count 2 alleging conspiracy to commit trafficking in cocaine as the underlying felony), aggravated assault upon Ross and conspiring to commit the offense of trafficking in cocaine. Ross was charged with trafficking in cocaine and possession of cocaine with intent to distribute. Parker and Allison were tried together. Parker was convicted of voluntary manslaughter as a lesser included offense of Count 2, aggravated assault of Ross, and conspiracy to commit trafficking in cocaine, and sentenced to serve a total of 50 years in prison. Allison was convicted of conspiracy to commit trafficking in cocaine; his conviction was subsequently affirmed by this Court. *Allison v. State*, 259 Ga. App. 775 (577 SE2d 845) (2003).

1. Parker first contends that the trial court erred in denying his motion for new trial based on newly discovered evidence of perjury and the subornation of perjury.

As to this issue, the record shows that at trial Ross was called as a witness by the State, but that he initially refused to testify despite having been granted immunity. However, on cross-examination by Allison's counsel, Ross testified that Allison was not present at the scene of the shootings. On cross-examination by Parker's attorney, he testified that Hamilton had shot him. On redirect examination by the State, he identified Parker as the other person who shot him, and he identified Hamilton as the person who killed Bannister.

Parker attached an affidavit to his amended motion for new trial, averring that after the trial he was placed in a holding cell with Allison, who told him that he had paid $10,000 to Ross in exchange for favorable testimony at trial. Parker also gave similar testimony at

---

[1] For a more detailed recitation of the facts, see *Allison v. State*, 259 Ga. App. 775 (577 SE2d 845) (2003).

the motion for new trial hearing. Allison also testified at the motion for new trial hearing and gave equivocal testimony concerning whether he had this conversation with Parker.

Ross also testified at the motion for new trial hearing. In contradiction to his trial testimony, he testified at the hearing that Allison was present at the scene of the attempted drug deal and shootings, but that he could not testify with certainty that he saw a weapon in Allison's hand, or that Allison shot him. Ross said he did not remember testifying at trial that Allison was not present, but went on to explain that at the time of the trial "things probably wasn't very clear to me back then, because of what happened, and the trauma that I was under. So a lot of things weren't very clear in my mind." Ross also adamantly denied that he had taken money from Allison or someone representing him in exchange for his testimony.

Parker argues he is entitled to a new trial based on Ross's "perjured" testimony and based on the evidence which suggests that Allison suborned the perjured testimony. The law is well settled that a post-trial declaration by a State's witness that his trial testimony was false does not form the basis for the grant of a new trial. *Morrison v. State*, 256 Ga. App. 23, 25 (4) (567 SE2d 360) (2002); *Leon v. State*, 237 Ga. App. 99, 104 (3) (513 SE2d 227) (1999). Moreover, "[a]bsent proof of a conviction for perjury of a material witness, a verdict cannot be set aside for perjury." (Citation omitted.) *Lopez v. State*, 267 Ga. App. 532, 539 (7) (601 SE2d 116) (2004).

> The only exception to the rule against setting aside a verdict without proof of a material witness' conviction for perjury, is where there can be no doubt of any kind that the State's witness' testimony *in every material part* is purest fabrication. [Cit.] A recantation impeaches the witness' prior testimony. [Cit.] However, it is not the kind of evidence that proves the witness' previous testimony was the purest fabrication.

*Johnson v. State*, 236 Ga. App. 764, 765 (1) (513 SE2d 291) (1999).

Parker has offered no proof that Ross was convicted of perjury, and he has likewise failed to establish that his testimony in "every material part is purest fabrication." Ross did not admit that his trial testimony was false, but instead testified at the new trial hearing that he did not remember testifying differently at trial. He also offered an explanation of why his testimony at the hearing might be different from his testimony at trial. Moreover, although his testimony at the new trial hearing placed Allison at the scene, he still did not positively identify Allison as one of the shooters.

Parker also argues that the State knowingly used perjured testimony to secure a conviction. Pretermitting whether Parker waived this argument by failing to raise it below, we find no merit to this contention. The prosecutor in this case was at all times forthcoming with the court and jury concerning doubts about Ross's veracity based on the number of inconsistent statements he had made but, as she explained at the motion for new trial hearing, deemed that his testimony was needed to establish the aggravated assault charge since he not only had charges pending against him but was also a victim. Moreover, she did not allow Ross's testimony concerning Allison's presence at the scene to go uncorrected, but attempted through further examination of the witness and the presentation of other evidence to show facts contrary to his testimony. Based on the foregoing, we find this enumeration to be without merit. *Swift v. State*, 274 Ga. 807, 808 (2) (560 SE2d 19) (2002); *Peake v. State*, 247 Ga. App. 374, 375-376 (2) (545 SE2d 309) (2000).

2. Parker next contends that his trial counsel was ineffective, alleging that he did not adequately prepare for trial, failed to do a thorough investigation, failed to file certain motions and failed to adequately advise Parker of his rights or thoroughly discuss the case with him. He also contends he should not have been allowed to give "unrestricted" pretrial interviews with Allison's attorney and a prosecuting attorney.

As a general matter, we note that Parker was acquitted of several of the charges against him, and found guilty of a lesser included offense on the felony murder charge. "This circumstance strongly supports the conclusion that the assistance rendered by the attorney fell within that broad range of reasonably effective assistance which members of the bar in good standing are presumed to render." (Footnote omitted.) *Branton v. State*, 258 Ga. App. 221, 224 (3) (573 SE2d 475) (2002).

Parker's trial attorney testified at the hearing on the motion for new trial that his practice consists of about 95 percent criminal cases, and that he had tried 30 to 40 cases prior to this case. He testified that he discussed the evidence and the discovery he obtained from the State with Parker, and that he talked with the State's witnesses and reviewed their statements. He also explained that his defense strategy was to focus on the identification problems, and to show that Parker was not one of the shooters. He also testified that it was his judgment Parker should not testify so he did not prepare him to be a witness, and that if the other participants did not testify the State would have difficulty in proving its case since all the witnesses were defendants. Moreover, he testified as to his strategy in allowing Parker to meet with the prosecuting attorney, and that his intent from the beginning was to try to secure a plea deal for his client, since

Parker had already made a statement prior to his being retained admitting involvement in the drug deal. Although trial counsel testified that "in retrospect" he might do some things differently, and that he could have been better prepared, "the reasonableness of counsel's conduct must be viewed at the time of trial and under the circumstances of the case." (Punctuation and footnote omitted.) *Carter v. State*, 265 Ga. App. 44, 49 (4) (b) (593 SE2d 69) (2004). Parker has failed to show how additional investigation or consultation would have resulted in a different outcome. *Sewell v. State*, 229 Ga. App. 685, 689 (1) (d) (494 SE2d 512) (1997).[2]

Parker also argues he was harmed by his meeting with Allison's attorney because his trial attorney was placed on Allison's witness list because of that meeting. He contends, in a separate enumeration of error, that this resulted in an undisclosed conflict of interest. His trial attorney testified at the motion for new trial hearing that he did not give his inclusion on Allison's witness list "a whole lot of credence" since in his opinion, the attorney representing Allison "huffs and puffs . . . and bluffs. . . ." Moreover, Parker did not call Allison's trial attorney as a witness at the motion for new trial hearing, and no evidence was presented concerning why Parker's attorney was placed on the witness list.

> To establish ineffective assistance of counsel due to a conflict of interest on the part of trial counsel, a defendant who raised no objection at trial must prove that counsel "actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." . . . Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction. (Citations and punctuation omitted.) *Sartin v. State*, 223 Ga. App. 759-760 (479 SE2d 354) (1996).

*Leon v. State*, 237 Ga. App. at 106-107 (4) (d). Clearly, Parker has failed to meet this burden. He was not improperly denied a new trial on this basis.

3. Parker also claims the trial court erred in recharging the jury. We find no error. First, Parker complains that the trial court improperly shifted the burden of proof to him when it omitted the word "not" in telling the jury that "if you are [not] satisfied beyond a reasonable

---

[2] Parker also claims that his trial counsel was ineffective in cross-examining Ross, because he opened the door to damaging testimony that was elicited by the State during its examination of the witness. However, this argument is speculative at best, and given the nature of the charges against Parker, we cannot see how trial counsel could have avoided the State asking the witness about Parker's involvement in the shooting.

doubt that a conspiracy existed at the time of a particular declaration . . ." to disregard any testimony as to alleged admissions made out of the presence of the defendant by the alleged co-conspirators. This actually allowed the jury to disregard the testimony of a co-conspirator *even if* the jury found the existence of a conspiracy beyond a reasonable doubt. And we do not agree that reversible error occurred because the trial court, during a lengthy definition of conspiracy, referred to "criminal attempt to traffic in cocaine" instead of "conspiracy to commit trafficking in cocaine." Likewise, we have examined the other alleged misstatements in the recharge, and find no reversible error. *Peake v. State*, 247 Ga. App. at 375 (1).

4. Parker also contends that the trial court erred in allowing Hamilton to testify that "I assume that Randall Parker had a gun, because he usually carries a .9 millimeter with him." The record shows that the trial court sustained Parker's objection to the testimony, and Parker moved for a mistrial. The court then instructed the jury to ignore the testimony, and Parker did not renew his motion. "It is well settled that where a defendant objects and moves for a mistrial during the examination of a witness, and the trial court denies the motion but takes some corrective action, if the defendant is dissatisfied with that action, he must renew the objection or motion; otherwise, the issue is waived." (Footnote omitted.) *Rambo v. State*, 266 Ga. App. 791, 793 (2) (598 SE2d 85) (2004).

5. Parker next contends that the trial court improperly restricted his cross-examination of one of the investigating officers. But our examination of the transcript shows that the procedure employed by the trial court allowed Parker's counsel to cross-examine the witness about a report he prepared, which contained an error potentially harmful to co-defendant Allison, without improperly admitting the erroneous information yet with no undue infringement upon Parker's right to cross-examine the witness about the report. The record further shows that when the trial judge announced the procedure he wanted counsel to use in conducting the cross-examination about the report, Parker's counsel responded "I respect that, Your Honor. I'll abide by that." This enumeration is thus also without merit.

6. In his next enumeration of error, Parker argues that he should have been granted a mistrial based on the State's improper handling of Ross's invocation of his right to remain silent and a violation of Parker's right to confront him. First, as we noted in *Allison v. State*, 259 Ga. App. at 779-780 (5), this is not a case where the prosecuting attorney improperly attempted to question a witness who had refused to testify by asking leading questions; rather, in this case the "prosecuting attorney ceased questioning the witness after he refused to testify." Id. at 780. However, Allison's attorney then began questioning Ross, and he responded to those questions. Ross also

responded to further questioning by the State, and although he declined to answer some of his questions, Parker's counsel also extensively and effectively cross-examined Ross. Moreover, although Parker complains that some of the unanswered questions went to the conspiracy to commit trafficking charge, Ross testified that he did not know Parker before the night in question, and that there was no meeting that night with Parker to buy or sell drugs.

7. We find no merit to Parker's next enumeration of error, challenging the admission of his custodial statement following a *Jackson-Denno* hearing. The trial court specifically found that Parker had been advised of his right to an attorney, and that he voluntarily gave a statement to police without counsel present. Although Parker argues that his testimony at the new trial hearing requires a finding that he requested an attorney and that the detective proceeded with the interview despite his invocation of his right to counsel, the trial court, the factfinder at the hearing, was entitled to disbelieve Parker's testimony. *Carter v. State*, 265 Ga. App. at 49 (4) (a). And the transcript of the *Jackson-Denno* hearing shows that the issue of whether Parker requested an attorney prior to giving his statement was raised and considered by the trial court before it admitted the statement. Moreover, as the State points out, the challenged statement is consistent with Parker's subsequent statement to the prosecuting attorney, and thus Parker cannot show how he was harmed by the admission of the first statement. *Mitchell v. State*, 260 Ga. 229, 230 (2) (391 SE2d 761) (1990). This enumeration is thus without merit.

8. Contrary to Parker's eighth enumeration of error, "[t]he law is clear in this state that '(a) trial court may, after the jury has had a case under consideration and indicates that it is unable to agree on a verdict, inquire how the jury stands numerically.' [Cits.]" *Gibson v. State*, 272 Ga. 801, 802 (2) (537 SE2d 72) (2000). Pertinently, the trial court did not inquire into the *nature* of the jury's numerical division. Id.; *Sears v. State*, 270 Ga. 834, 839 (1), n. 1 (514 SE2d 426) (1999). This enumeration thus affords no basis for reversal.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 12, 2005 — ■

*Moran & Hedgepeth, William M. Moran*, for appellant.
Randall B. Parker, *pro se*.
*Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Assistant District Attorney*, for appellee.