## S06A1807. CASTILLO v. THE STATE.
(642 SE2d 8)

BENHAM, Justice.

In June 2001, appellant Anthony Jacob Castillo was tried with his co-defendant, James Edward Neason,[1] and was found guilty of and sentenced for the felony murder (armed robbery) of Patricio Vazquez Ibarra, two counts of aggravated assault of Vazquez Ibarra (aggravated assault by shooting and aggravated assault with intent to murder), the criminal attempt to commit armed robbery of Vazquez Ibarra, the aggravated assault of Severo Vazquez Ramos, two counts of burglary (entering Vazquez Ibarra's dwelling place with intent to commit aggravated assault and with intent to commit a theft), and four counts of possession of a firearm during the commission of a crime (murder, armed robbery, aggravated assault of Vazquez Ibarra

---

[1] Neason's separate appeal from the judgment of conviction was affirmed by this Court in *Neason v. State*, 277 Ga. 789 (596 SE2d 120) (2004).

and aggravated assault of Vazquez Ramos).[2] After reviewing the record and the transcript in light of appellant's enumerations of error, we affirm the judgment of conviction.

The forensic pathologist who performed the autopsy on Vazquez Ibarra testified the victim died from a gunshot fired from a distance of several inches to several feet away in which the bullet had entered the victim's right cheek and exited the back of his neck. The bullet was recovered from the victim's clothing, and a firearms expert testified it had been fired from a Smith & Wesson .357 magnum revolver that had been found in the middle of a busy Clayton County highway on April 30, 2000.

Severo Vazquez Ramos, the victim of the aggravated assault, testified that appellant was one of two men and a woman who came to the door of the apartment he shared with his uncle, Vazquez Ibarra, at 10:00 p.m. on February 18, 2000, and offered to sell the occupants marijuana and sex. The occupants declined the offer and, an hour later, two masked men kicked in the door of the apartment and one of the men pointed a gun at Vazquez Ramos and demanded money. After the witness gave $45 to the robber, the armed man pointed the gun at Vazquez Ibarra and demanded money. The victim refused to comply and threw a beer bottle at the armed intruder as the intruder approached him. The armed man shot the victim in the head and pulled the telephone line from the kitchen wall. His accomplice dragged the shooter out of the apartment and the duo ran off. Vazquez Ramos identified appellant as the shooter because the shooter was wearing the same clothing appellant had worn in the earlier visit to the apartment, was the same height and weight as the earlier visitor, and had a voice similar to that of the earlier visitor. The witness identified the gun found in the highway as "like" the gun the intruders used.

Appellant's former girlfriend identified the gun as belonging to appellant and testified she and appellant lived in the same apartment complex as the victims at the time of the crimes. She testified that appellant and co-defendant Neason had returned to their apartment late the night Vazquez Ibarra was killed, and appellant told her

---

[2] The crimes took place on February 18, 2000. Appellant was arrested on May 22, 2000, and was named in a true bill of indictment filed on March 28, 2001. Appellant's first trial ended in a mistrial on June 1, 2001, and he and co-indictee Neason were tried together in a trial that began on June 11, 2001, and concluded with the jury's return of its verdicts on June 19. Appellant's sentence was filed on June 21, 2001, and his motion for new trial was timely filed on July 18. New counsel replaced trial counsel and amended the motion for new trial on November 17, 2005, and February 7, 2006. The hearing on the motion took place on February 7, 2006, and the motion was denied on March 8, 2006. A notice of appeal was timely filed on March 24, and the appeal was docketed in this Court on June 30. The appeal was submitted for decision on the briefs.

he had shot someone. She identified the gun found in the middle of the highway as having belonged to appellant and as the gun he said he had used in the killing.[3]

1. The evidence summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Drinkard v. Walker*, 281 Ga. 211 (636 SE2d 530) (2006).

2. Appellant asserts the trial court erred when it denied his motion to suppress items seized during the execution of a search warrant of the apartment where he lived. He maintains the search warrant was invalid because it was issued and executed approximately 90 days after the murder, and because the affidavit submitted in support of the application for the warrant did not contain facts sufficient to support a finding of probable cause.

The record reflects that appellant filed a motion to suppress the items seized during the search on the ground that the search was conducted prior to the issuance of the search warrant. The record does not contain a transcript of any hearing held on the motion or the entry of an order disposing of the motion. The trial transcript contains neither an oral ruling on the motion nor an objection when the seized items were tendered for admission into evidence. In the absence of a ruling on the pretrial motion and of an objection when the evidence was offered at trial, appellant waived his right to contest the admissibility of the evidence on appeal. *Bridges v. State*, 263 Ga. App. 849 (2) (589 SE2d 616) (2003). Cf. *Kilgore v. State*, 247 Ga. 70 (279 SE2d 332) (1981) (recognizing that the rule that defendant need not object to the admission of evidence at trial to preserve the issue for appellate review where motion to suppress has been overruled is not applicable where the motion to suppress was not ruled on).

3. Appellant next contends he was deprived of his right to a thorough and sifting cross-examination of a detective when the trial court interrupted counsel's attempt to impeach another witness through the testimony of the detective. Earlier, trial counsel had attempted unsuccessfully to impeach the other witness by means of a prior inconsistent statement.[4]

---

[3] The handgun had been ballistically linked to the murder of a taxicab driver on April 30, 2000. The killers of the taxicab driver threw it onto the highway as they fled the scene (*Mitchell v. State*, 275 Ga. 42 (1) (561 SE2d 803) (2002)), and a witness in the trial of one of the men convicted of killing the taxicab driver testified the gun had been taken from appellant's closet. *Johnson v. State*, 276 Ga. 368, 369 (578 SE2d 885) (2003).

[4] Earlier, Demetra Johnson had testified that appellant showed her how he had shot a man in the man's apartment, and appellant's counsel cross-examined her, using the testimony Ms. Johnson had given in appellant's first trial ten days earlier. Counsel attempted to get Ms. Johnson to admit she had spoken with the investigating detective in February 2000 during her

A defendant has the right to a thorough and sifting cross-examination of the witnesses called against him, but the trial court has discretion to limit the scope of cross-examination. [Cit.] In impeaching a witness with a prior inconsistent statement, the cross-examiner must meet three requirements. First, the prior statement must contradict or be inconsistent with the witness's in-court testimony; second, the prior statement must be relevant to the case; and, third, the examining attorney must lay the proper foundation with the witness. [Cit.]

*Duckworth v. State*, 268 Ga. 566 (1) (492 SE2d 201) (1997). It is not error to limit cross-examination when one of the three requirements is not met. *Wynn v. State*, 272 Ga. 861 (2) (535 SE2d 758) (2000). In the case at bar, it was established during the cross-examination of the witness who allegedly made a prior inconsistent statement that the prior statement being used by trial counsel was not inconsistent with the witness's in-court testimony. Accordingly, it was not error for the trial court to limit appellant's cross-examination of the detective through whose testimony trial counsel attempted to impeach the earlier witness by establishing that the earlier witness had made a prior inconsistent statement.

4. Appellant maintains the trial court's charge on conspiracy incorrectly stated the law, shifted the burden of proof to appellant, and was unclear. The charge complained of was the pattern charge contained in Section 2.02.40 of Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (3rd ed., as updated through Jan. 2006). It instructs the jury to disregard any testimony as to alleged admissions made by an alleged co-conspirator out of the presence of a defendant if the jury determined there was no conspiracy or was not satisfied beyond a reasonable doubt that a conspiracy existed at the time a particular declaration was made, or if the jury determined that the defendant was not a party to the conspiracy, or if the jury determined that the existence of the conspiracy had been shown only by the

---

son's trial for the murder of the taxicab driver and had told him appellant had told her he had killed someone. After the trial court read the earlier testimony aloud and counsel asked Ms. Johnson whether she was confirming today that she had talked to the detective about what appellant allegedly told her, the trial court interrupted counsel to say, "That's nowhere in this transcript[,]" and counsel ceased her line of questioning. When the detective was called as the next witness, counsel pursued the matter with him on cross-examination by asking whether Ms. Johnson had told him in 2000 that appellant had told her he had killed a Mexican. When the State objected, the trial court told counsel "you did not prove that [Ms. Johnson had testified in the first trial that she had told the detective in 2000 about appellant's statement]. There's nothing in the transcript that says that. . . . You're misleading the jury. And one more time and I'll hold you in contempt." Trial counsel then ceased the line of questioning.

declaration of co-conspirators, or if the jury determined that the alleged admissions by co-conspirators were not made during and in furtherance of the alleged conspiracy, or if the jury determined that no admissions were made to a third party by an alleged co-conspirator. The charge informs the jury of the circumstances under which the alleged declarations of an alleged co-conspirator made out of the presence of the defendant are to be disregarded, and it followed immediately the trial court's instruction that any admissions made by one or more of the conspirators during and in furtherance of the alleged conspiracy could be considered by the jury against all the conspirators if the existence of the conspiracy had been shown beyond a reasonable doubt by evidence other than the declarations of alleged co-conspirators. See OCGA § 24-3-5. Contrary to appellant's assertion, the charge is an accurate statement of the law. See, e.g., *Gunter v. State*, 243 Ga. 651, 659 (6) (256 SE2d 341) (1979) (if the jury determines a conspiracy has not been proven beyond a reasonable doubt, " 'it is then their duty not to consider the testimony of acts and declarations of the supposed co-conspirator which has been admitted' "); *Crowder v. State*, 237 Ga. 141, 153 (227 SE2d 230) (1976) (statement to police by conspirator incriminating another as a party to the crime is not admissible as a statement of a co-conspirator because it was not made during the pendency of the conspiracy). Furthermore, it does not shift the burden of proof to the defendant. Cf. *Parker v. State*, 274 Ga. App. 347, 350-351 (3) (617 SE2d 625) (2005) (burden of proof not shifted by failure to include "not" in the pattern charge, so as to read "not satisfied beyond a reasonable doubt that a conspiracy existed. . . ."). We recognize the number of exceptions to the general rule of admissibility of statements of co-conspirators and the number of sub-requirements underpinning them, and believe the oral delivery of the charge (i.e., the trial court's tone of voice and vocal emphasis) saves the charge from appellant's contention that it is unclear. Cf. *Milhouse v. State*, 254 Ga. 357 (2) (329 SE2d 490) (1985) (setting out means of establishing a record of a trial judge's vocal inflections and facial expressions for appellate purposes). The trial court did not err when it gave the instruction to the jury.

5. Appellant asserts his conviction should be reversed because the State allegedly did not meet its ongoing obligation under OCGA § 17-16-4 to provide him with discovery. At issue is the report of the GBI firearms expert asked to determine the make of gun that could possibly have fired the bullet which fatally injured the victim. OCGA § 17-16-4 (a) (3) requires a prosecuting attorney to give the defendant access to evidence within the possession, custody, or control of the State or the prosecution that is "intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial or were obtained from or belong to the defendant," and access

to scientific test reports "if the state intends to introduce in evidence in its case-in-chief or in rebuttal the results. . . ." OCGA § 17-16-4 (a) (4). Inasmuch as the scientific report that was not made available to trial counsel was not introduced into evidence by the State in its case-in-chief or in rebuttal,[5] the State did not violate the statute by failing to disclose it to appellant.

6. Appellant complains the trial court erred when it admitted into evidence a notebook of song lyrics found in appellant's bedroom during the execution of a search warrant. The failure to object at trial waives appellate review of the issue. *Earnest v. State*, 262 Ga. 494 (1) (422 SE2d 188) (1992).

7. Appellant contends he was denied his right to effective assistance of counsel by trial counsel's failure to object on character grounds to the admission of the notebook containing song lyrics; counsel's failure to pursue or renew a motion to sever his trial from that of his co-defendant; and counsel's failure to successfully cross-examine the detective regarding the credibility of another witness who had testified appellant had admitted to her that he had killed the victim. See Division 3, supra. In order to succeed on this claim, appellant must show that counsel's performance was deficient and that, but for the deficient performance, there is a reasonable probability that the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984); *Henry v. State*, 269 Ga. 851 (5) (507 SE2d 419) (1998).

(a) At the hearing on the motion for new trial, trial counsel described the contents of the notebook as "devastatingly harmful" and testified that her failure to object to its admission was not a matter of trial strategy. On appeal, appellant contends the notebook would not have been admitted had trial counsel objected on the ground that it impermissibly placed his character in evidence. Because the song lyrics alluded to drug usage and violent behavior, including killing, and arguably suggested appellant might be inclined to violence, "it would not be inadmissible because it incidentally placed appellant's character in evidence. [Cit.] Whether the evidence's prejudice outweighed its probative value was a matter addressing itself to the discretion of the trial court. [Cit.]" *Thomas v. State*, 270 Ga. App. 181, 183 (2) (606 SE2d 275) (2004). Inasmuch as

---

[5] On direct exam, the expert testified that the bullet that passed through the victim was fired from the gun retrieved on April 30 from the highway. On cross-examination, the expert mentioned he had been asked by police shortly after the February shooting to determine from the spent bullet the type of weapon that could have fired it. The latter report, which listed three weapons, including a Smith & Wesson .357 magnum revolver, as possible weapons that fired the bullet, was not given to defense counsel and was not used at trial due to the recovery of the actual murder weapon.

appellant cannot establish that the trial court's admission of the notebook would have constituted an abuse of discretion had trial counsel voiced an objection, we see no merit in this allegation of ineffective assistance of counsel. See *Paige v. State*, 277 Ga. App. 687 (4) (a) (627 SE2d 370) (2006).

(b) Appellant's first trial facing these charges was one in which the trial court had granted the motion to sever appellant's trial from that of his co-indictee. The first trial ended in a mistrial on June 1, 2001, at which time the trial court announced it was rescinding the grant of severance because there had been no issue under *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), and there had been no evidence introduced at trial that was not admissible against both co-indictees. It is not an abuse of the trial court's discretion to deny a motion to sever where the number of defendants tried together is not so great as to create confusion of evidence, the law applicable to each defendant is substantially the same and there is no showing the jury was confused, and there was no *Bruton* problem. *Isaac v. State*, 269 Ga. 875 (7) (505 SE2d 480) (1998). In light of the accuracy of the trial court's rationale for its ruling, we see no prejudice suffered by appellant, even assuming trial counsel's failure to object to the rescission of the severance order constituted deficient performance.

(c) With regard to the claim of deficient performance in cross-examining the investigating detective, we noted in Division 3, supra, that the prior statement which trial counsel was attempting to use to impeach another witness was not inconsistent with that witness's testimony, and the trial court did not err when it limited trial counsel's cross-examination on the subject. Appellant's contention of ineffective assistance with regard to that issue is without merit. See Division 3, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 5, 2007.

*Moran & Associates, William M. Moran, Matthew T. McNally*, for appellant.

*Jewel C. Scott, District Attorney, Anece B. White, Assistant District Attorney, Thurbert E. Baker, Attorney General, Laura D. Dyes, Assistant Attorney General*, for appellee.