A98A1241. BALES v. THE STATE.
(503 SE2d 607)

ELDRIDGE, Judge.

Teddy Lamar Bales was indicted for a series of altercations with his wife, Brenda Bales, and with law enforcement officers, which occurred on October 25, 1995, December 8, 1995, and March 9, 1996. After a trial, a jury convicted the defendant of aggravated assault, battery, obstruction of a law enforcement officer (misdemeanor), criminal attempt to commit interference with government property, and two counts of simple battery for his activities on October 25, 1995. The defendant was convicted of misdemeanor obstruction of a law enforcement officer for the incident on December 8, 1995. The defendant was convicted of aggravated assault, cruelty to children, interference with government property, and one count each of felony and misdemeanor obstruction of a law enforcement officer for the incident on March 9, 1996. The defendant's motion for new trial was

denied. His subsequent motion for out-of-time appeal was granted.

The evidence viewed in a light most favorable to the verdict, shows the following: On October 23, 1995, Officers John Bennaman and Tim Rowley of the Heard County Sheriff's Department responded to a domestic violence call at the Bales' home. Mrs. Bales reported that the defendant had "whipped her with a stick" for several hours. Mrs. Bales's back was bruised and bloody, and it appeared that she had been struck numerous times by an object. Some of the bruises overlapped each other. Mrs. Bales's legs were also bloody. Mrs. Bales had to remove a piece of wood from her legs with a pair of tweezers. Mrs. Bales also stated that the defendant had bitten her on the back, and the officers observed bite marks on her back.

When Mrs. Bales attempted to re-enter her home with the officers, they found that the door had been barricaded, and Officer Bennaman had to force the door open. The officers found the defendant asleep in the bed with some of the children. The officers woke the defendant and asked him to get dressed. The defendant became very hostile and began cursing in a loud voice. As the officers were escorting the defendant out of the bedroom door in handcuffs, the defendant stopped in front of Mrs. Bales, looked directly at her, and intentionally spit in her face.

When the officers reached the yard with the defendant, he became more violent and attempted to get away. Officer Bennaman attempted to spray the defendant with OC spray, but only a portion of the spray hit him. In order to get the defendant into the police car, the officers had to physically carry him; Officer Bennaman picked the defendant up under his arms while Officer Rowley grabbed his legs. The defendant kicked at Officer Rowley and continued to curse and squirm as they carried him to the police car.

After the officers forced the defendant into the back of Officer Bennaman's patrol car, the defendant continued to curse to such an extent that Officer Bennaman could not call on his radio to report he was en route to the sheriff's department. The defendant kicked the cage between the back seat and the driver's seat and kicked the back door of the patrol car. When Officer Bennaman turned around to tell the defendant to stop, the defendant spit in Officer Bennaman's face. The defendant continued to curse in a loud voice and kick at the cage of the patrol car until they reached the sheriff's department.

On December 8, 1995, Sergeant Robert Camp of the Heard County Sheriff's Department stopped the El Camino within which the defendant was a passenger pursuant to a report that an individual involved in a fight at the local Kwiki store had fled the scene in the vehicle. John Brand, a jailer with the Heard County Sheriff's Department, was riding in Sergeant Camp's patrol car. When the defendant exited the vehicle, he was swinging his arms and cursing

loudly. When Sergeant Camp attempted to pat the defendant down, the defendant fought with Sergeant Camp before fleeing the scene.

The police were once again called to the Bales' home due to a domestic violence situation on March 9, 1996. When the officers arrived, Mrs. Bales was standing outside the house. Her arm was cut and bleeding. Mrs. Bales was very upset and stated her husband had cut or stabbed her with a knife. When the officers attempted to enter the house, the defendant fled through the back door into the woods. He was finally captured when he became tangled in a barbed wire fence.

The defendant resisted arrest. He cursed at the officers in a loud voice and attempted to hit and kick at them. The defendant kicked Sergeant Red in the leg. The defendant fought the officers the entire time they were escorting him to the patrol car. He refused to enter the patrol car voluntarily and grabbed the sides of the door as the officers tried to place him inside. Once the defendant was in the patrol car, he began kicking and butting his head against the back window. The patrol car's window frame was broken loose, and the outside of the door was dented outward from the force of the defendant's kicks to the interior of the door. When the officers attempted to remove the defendant from the patrol car at the station, the defendant fought the officers the entire time.

The Bales' 12-year-old daughter, Mandy, gave a statement to police. She stated that, when she placed herself between the defendant and Mrs. Bales, the defendant told Mandy that if she did not move he would have to cut her.

1. The defendant challenges the sufficiency of the evidence.

When reviewing a conviction, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). While both Mrs. Bales and Mandy gave testimony at trial that was in conflict with their prior statements, "it is the function of the jury, and not this Court, to resolve conflicts in the evidence. This Court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses." (Citations and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997). Viewed in the light most favorable to the verdict, the evidence was sufficient to enable a rational trier of fact to find the defendant guilty of the offenses for which he was convicted. *Jackson v. Virginia*, supra.

2. The defendant contends that the trial court erred in failing to grant his motion for a mistrial after the State placed his character into issue.

During trial, Mrs. Bales was called as the State's first witness. Her testimony at trial was inconsistent with the statements she had given law enforcement officers during the course of their investigation. On direct examination, she testified that, during the October 25, 1995 incident, the defendant was angry at her because she had spent $400 of his money; that she was "doped up and drunk" and the defendant was trying to stop her from going out to get more beer; and that she called the police because she was angry. On cross-examination by defense counsel, she testified that she had spent between $400 and $700 on alcohol and drugs. Defense counsel then asked, "What type of drugs?" Mrs. Bales responded, "Crack cocaine." Mrs. Bales went on to testify that she spent this money with her sister. On re-direct examination by the State, the following testimony was given by Mrs. Bales: "Q: Now you just testified again under oath that you spend money on cocaine back, when was that? A: When I was with my sister, '93. Q: Now do you remember talking to me Wednesday? A: Yes. Q: Did you tell me that you quit cocaine? A: Yes. . . . Q: Did you tell me that you had only done it approximately one time a month? A: When I done it, yeah. Q: That you quit in January of '95. A: Yes. Q: And did you tell me that there was only one person that you ever do cocaine with? A: Yes. I said the main person that I do it with is my husband is the main person." At this time defense counsel objected and made a motion for a mistrial. The prosecutor stated that she expected Mrs. Bales to answer "yes" and her next question was going to be "And you never told me you did it with your sister Tammy" to contradict the testimony she had given on cross-examination. The trial court denied the defendant's motion for mistrial and gave curative instructions to the jury to disregard the testimony. After the curative instructions, the defendant renewed his motion for mistrial.

"[T]he decision of whether to grant a mistrial is within the sound discretion of the trial court and his ruling will not be disturbed absent an abuse of discretion. [Cit.]" *Buxton v. State*, 253 Ga. 137, 139 (3) (317 SE2d 538) (1984). The question, as asked by the prosecutor, required a yes or no answer, and any additional response made by the witness was a voluntary statement. "Given that the testimony was non-responsive to the prosecutor's question, and the trial court gave proper curative instructions to the jury, we find no abuse of discretion in the trial court's determination that a mistrial was not necessary to preserve [the defendant's] right to a fair trial." *Johnson v. State*, 223 Ga. App. 668, 671 (478 SE2d 404) (1996); *Beach v. State*, 258 Ga. 700, 701 (373 SE2d 210) (1988).

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED JUNE 3, 1998.

*Alfred F. Zachry*, for appellant.
*Peter J. Skandalakis, District Attorney*, for appellee.