A99A2357. DAVISON v. THE STATE.
(527 SE2d 285)

BARNES, Judge.

John Davison, Sr. appeals from his simple battery conviction, contending that insufficient evidence supports his conviction and that the trial court erred when it admitted oral and written state-

ments by the victim and a witness as part of the res gestae.

1. We must review Davison's "challenge to the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), construing the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict." *Sims v. State*, 226 Ga. App. 116 (1) (486 SE2d 365) (1997). Viewed in this light, the record shows that Davison's conviction arose out of a domestic dispute with his ex-wife. At the time of this dispute, Davison and his ex-wife had reconciled and were living together with their two children, John, Jr., age twelve, and Ashley, age seven.

The victim, who was the first witness called by the State, testified that the dispute began when Davison came to bed around 9:15 p.m. and asked her about a noise in the hallway. Because she was deaf in one ear, the victim did not hear the noise and told Davison that she did not hear anything. Davison then left the room and yelled at Ashley, causing her to cry. When he returned to the master bedroom, he was carrying a blow-dryer and blamed the victim for Ashley's use of the blow-dryer.[1] When the victim explained that it was Davison's mother's fault for giving a blow-dryer to the child, the argument escalated and Davison called the victim a "c--t." When the victim told Davison not to ever call her that, he hit her in the face and started pulling her hair. He then taunted her by repeating over and over: "Hit me b---h. You're going to jail tonight." When the victim hit Davison in the mouth as she tried to make him stop pulling her hair, he let her go, started laughing, and told her repeatedly that she was going to go to jail.

The victim further testified that her two children then ran into the room and John, Jr. told his father to "stop it." He also told his father that he had seen him hit the victim first. After Davison "stomped out of the room," the victim called the police. While the victim and her two children were waiting for the police to arrive, Davison told them that he would kill them if they told the police what had happened. Two policemen arrived around fifteen minutes later. The victim and her son, John, Jr., then gave oral and written statements to one of the police officers. The victim testified that she could not recall whether she told the police officer that Davison had hit her but acknowledged that she did not state that Davison had hit her in her written statement.

The State called John, Jr. as its second witness. John, Jr. testified that Davison "got mad at my mom, and he hit my mom and

---

[1] The victim explained that Ashley liked to place the blow-dryer either in or under her bed because the noise helped her to fall asleep.

called her a C word and grabbed her hair. And she tried to fight him off and hit him in the lip." While Davison was pulling the victim's hair, he told her, "Hit me, the B word. You're going to jail tonight." He also testified that his father threatened to kill him if he told the police what had happened.

Deputy Wolfe testified that Davison was outside when he arrived at the home approximately five minutes after he was dispatched. The victim and her two children were inside the home, and the victim was "very distraught." She was crying, her entire face was very red, and she was pulling loose hair out of her head. Deputy Wolfe testified that the victim and her son told him a version of events that was consistent with their trial testimony, including the fact that Davison had hit the victim first. He admitted on cross-examination, however, that his report did not state that the victim had told him her husband hit her and that it should have included this information.

The State published the victim's and her son's statements into evidence, over defense counsel's objections, after Deputy Wolfe's testimony. In her statement, the victim wrote:

> We were arguing about his mother. He grabbed my hair, kept telling me to hit him, and he would have me arrested. He kept pulling my hair until it hurt too much and I hit him. He jumped up and said, I'll have you arrested now. He threatened my son who saw the whole thing if he told him he was — he was threatened that he would kill him. I called the police.

The son wrote the following in his statement: "He turned around and hit my mom. He also grabbed my mom's hair. And she was fighting him off and hit him. He also threatened me and told me he would kill me."

Davison testified that the victim hit him after he called her "the C name" and that he pulled her hair to get her off of him. He denied hitting her in the face at any time during their fight that evening.

2. We find this evidence sufficient to support Davison's simple battery conviction. "[I]t is the function of the jury, and not this Court, to resolve conflicts in the evidence." (Citations and punctuation omitted.) *Bales v. State*, 232 Ga. App. 761, 763 (1) (503 SE2d 607) (1998).

3. In his remaining assertion of error, Davison contends the trial court erred when it admitted the oral and written statements of the victim and John, Jr., based upon the res gestae exception to the hearsay rule. On appeal, "[a] trial court's determination that evidence is admissible as part of the res gestae will not be disturbed unless that finding is clearly erroneous." *Copeland v. State*, 235 Ga. App. 682, 684 (2) (a) (510 SE2d 124) (1998).

Res gestae declarations are those "accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought." OCGA § 24-3-3. "Res gestae evidence is usually contemporaneous to the act, but the length of time between the event and the declaration is not conclusive." (Citation omitted.) *Wilbourne v. State*, 214 Ga. App. 371, 372 (1) (448 SE2d 37) (1994).

[W]hat the law altogether distrusts is not after-speech but afterthought. In cases when a statement is narrative rather than exclamatory, the circumstances must be closely scrutinized, because narrative is generally the result of afterthought. If the declarations appear to spring out of the transaction — if they elucidate it — if they are voluntary and spontaneous, and if they are made at a time so near to it, as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous.

(Citations and punctuation omitted.) *Sims v. State*, 234 Ga. App. 678, 682 (2) (507 SE2d 845) (1998).

Davison argues that, when the victim and John, Jr. were alone together in the house before the police arrived, they could have worked together to come up with a story that helped the victim avoid going to jail. Davison bolsters his argument that the statements could have been deliberately invented with evidence that (1) the victim heard him tell the police dispatcher that they should come to the house because she had hit him; (2) that the victim told her side of the story in response to a police question; and (3) that John, Jr. was present when the victim told her version of events.

We need not address whether the trial court erred in admitting these statements because Davison's conviction cannot be reversed unless it is highly probable that their admission contributed to the jury's verdict. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Because we cannot say that this is such a case, any error in the admission of these statements was harmless. See *Gadson v. State*, 223 Ga. App. 342, 344 (2) (477 SE2d 598) (1996); *Gaston v. State*, 211 Ga. App. 116, 117 (3) (438 SE2d 107) (1993).

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED DECEMBER 28, 1999 —

*Boyce, Ekonomou & Atkinson, Michael G. Lambros*, for appellant.

*Richard R. Read, District Attorney, Andrea M. Dyer, Assistant District Attorney*, for appellee.