## A03A1971. LOWENTHAL v. THE STATE.
(593 SE2d 726)

MIKELL, Judge.

James E. Lowenthal was charged with driving under the influence ("DUI") of alcohol to the extent that he was a less safe driver, OCGA § 40-6-391 (a) (1), and driving under the influence of alcohol

---

by having an alcohol concentration of 0.08 grams or more, OCGA § 40-6-391 (a) (5). A jury convicted Lowenthal of both offenses.[1] He appeals, arguing that the trial court erred by admitting testimony of a prior DUI without holding a pre-trial hearing, by refusing to enforce a proposed stipulation of the prior DUI offered by defense counsel, by allowing the state to introduce a witness's testimony from the previous trial without a sufficient showing of due diligence by the state to determine that the witness was unavailable, and by allowing the admission of hearsay under the res gestae exception. Finding no error in the trial court's rulings, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that on July 6, 2002, Lowenthal went to a bar with his girl-friend, Michelle Maples, and another couple, Jessie and Laura Skidmore. While at the bar, Lowenthal drank "[q]uite a few beers," and Maples became angry with him for dancing with another woman. On the way back to Maples's home, Lowenthal asked Jessie Skidmore to "[s]top the car and let me out." Lowenthal got out of the car, and the three remaining individuals continued back to Maples's home. When Lowenthal did not return to Maples's home, Jessie Skidmore suggested they go out and look for him to make sure "he didn't get locked up for being a public drunk."

In the meantime, Officer Brian Dunn of the Henry County Police Department had stopped Lowenthal. Jessie Skidmore and Maples passed Officer Dunn and Lowenthal on the roadside, and Jessie Skidmore testified that, "we just kept going by; we didn't even stop to pick him up or nothing. [Maples] told me to keep driving, so I kept driving." Officer Dunn drove Lowenthal to a nearby gas station, dropped him off at the pay phone, and advised him to call a ride. Officer Dunn warned Lowenthal not to drive. Jessie Skidmore and Maples returned to Maples's home, and Lowenthal showed up five to ten minutes later.

Maples and Lowenthal argued again, and Lowenthal took his car keys and left. After Lowenthal drove away in his car, Jessie Skidmore and Maples followed him down Interstate 75 until he exited the interstate and entered a Shoney's parking lot. While following Lowenthal, Maples used her cell phone to call 911 and report that they were following a drunk driver.[2] Several minutes later, Officer Jason

---

[1] Lowenthal's first trial resulted in a hung jury and mistrial.

[2] The Henry County 911 dispatcher testified that at approximately 3:47 a.m., a "female called and advised that she was following a driver that looked suspiciously drunk, and they were on the McDonough exit near Wal-Mart and they were getting on [Interstate] 75 south. They drove down 75 south. I stayed on the phone with her, and she gave me a tag number, gave me her name, her cell phone number, and said they were getting off [exit] 216, and they turned right and went into the Shoney's parking lot. And she stayed a little bit back at that location and advised that the driver was now laying [sic] down in the vehicle."

Sanders of the Henry County Police Department arrived at the Shoney's parking lot. As he approached Lowenthal's parked car, Officer Sanders felt the hood to see if the engine was still warm. Officer Sanders testified that the engine was hot.

Officer Sanders noticed that Lowenthal's vehicle smelled of alcohol, that his eyes were red and glassy, and that his speech was slurred. Officer Sanders asked Lowenthal if he had been drinking, and Lowenthal stated that he drank four beers earlier in the evening. Officer Sanders directed Lowenthal to perform the one-leg stand. Officer Sanders testified that Lowenthal was very unbalanced and unsteady on his feet. Next, Lowenthal was given an alco-sensor test, which tested positive for alcohol. Officer Sanders arrested Lowenthal and immediately read him the Georgia implied consent notice. Lowenthal then consented to a breath test.

Officer Sanders took Lowenthal to the Henry County jail where he was given a breath test using the Intoxilyzer 5000. The first breath sample indicated a blood alcohol concentration of 0.115, and a second sample showed a concentration of 0.116. The jury convicted Lowenthal of DUI to the extent that he was a less safe driver and DUI with an alcohol concentration of 0.08 grams or more.

1. First, Lowenthal argues that the trial court erred in allowing Officer Jeremy Pirtle of the City of Hampton Police Department to testify that on September 3, 2000, Lowenthal was arrested and charged with DUI.[3] Before trial, the state filed a notice of intent to introduce evidence of similar transactions. During a pre-trial hearing on Lowenthal's motions in limine, the trial court overruled defense counsel's objection to this testimony, finding the evidence admissible as a similar transaction, and rejected defense counsel's proposed stipulation to the prior DUI. Though confusing, Lowenthal contends that the trial court violated his right to due process by failing to hold a pre-trial hearing as required by Uniform Superior Court Rule 31.3 (B), which would have established a lack of similarity between the prior DUI and this case: unlike the prior conviction, here, Lowenthal claims he was not driving the car. Lowenthal also argues that the trial court erred by rejecting his offer to stipulate to the prior conviction so as to minimize the prejudicial effect of live testimony about the prior conviction.

"In order for similar transaction evidence to be properly admissible, the [s]tate must establish a permissible purpose for admitting the evidence, sufficient evidence that the defendant committed the prior act, and sufficient similarity between the two acts that proof of the former tends to prove the latter." *Reese v. State*, 252 Ga. App. 650,

---

[3] Lowenthal pled guilty to this charge.

652 (2) (556 SE2d 150) (2001). As to the question of similarity, the trial court's findings will not be disturbed unless clearly erroneous. See *Mitchell v. State*, 206 Ga. App. 672, 673 (2) (426 SE2d 171) (1992). As we explained in *Reese*, "it is the simple act of driving while under the influence that establishes the commission of the crime." (Punctuation omitted.) *Reese*, supra, citing *Kirkland v. State*, 206 Ga. App. 27, 28 (3) (424 SE2d 638) (1992). Moreover, "[e]vidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so." *Reese*, supra, citing *Smith v. State*, 236 Ga. App. 548, 552 (3) (512 SE2d 19) (1999), rev'd on other grounds, 272 Ga. 83 (526 SE2d 59) (2000).

In *Reese*, we rejected the defendant's contention that the trial court erred in admitting evidence of his previous DUI conviction as a similar transaction in his pending DUI case, finding that the state satisfied all three prerequisites for the introduction of similar transaction evidence. To prove the similar transaction, the state offered the testimony of the investigating officer in the prior DUI.

In this case, the state filed a notice of intent to introduce evidence of the prior conviction. During a pre-trial hearing, the state informed the trial court that it intended to call Officer Pirtle to the stand to testify about Lowenthal's prior conviction. The state explained that the purpose of the evidence was to show Lowenthal's bent of mind, "that he's had — he's done this before[,]" and course of conduct. The trial court did not violate Lowenthal's due process rights. Further, contrary to Lowenthal's argument, the very fact that he claims he was not driving makes his prior DUI conviction even more relevant. The trial court did not err in admitting Lowenthal's prior DUI conviction.

Additionally, the trial court did not err in rejecting defense counsel's offer to stipulate to the prior conviction pursuant to *Old Chief v. United States*, 519 U. S. 172, 174 (117 SC 644, 136 LE2d 574) (1997) (when proof of convict status is at issue, "a district court abuses its discretion if it spurns [the defendant's offer to concede the fact of the prior conviction] and admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction"). Here, Lowenthal's prior conviction was not an element of the pending DUI charge; rather, the prior incident — as distinguished from the prior conviction — was used to show bent of mind. Further, contrary to Lowenthal's argument, the fact that he had committed a prior similar transaction is not a "legal status" analogous to "convicted felon"

status. The trial court did not err in rejecting Lowenthal's proposed stipulation and in allowing Officer Pirtle to testify about what happened in September 2000.

2. Second, Lowenthal argues that the trial court erred in allowing Jessie Skidmore's testimony from the first trial to be read into the record on the ground that he was unavailable to testify at the second trial. The trial court overruled defense counsel's objection, finding that the state had made reasonable efforts to locate Jessie Skidmore. Five days before trial, the state attempted to contact Jessie Skidmore by sending a subpoena to his last known address. Both the prosecutor and Henry County investigator Randall Coppolino called Jessie Skidmore's last known telephone number and left messages. Laura Skidmore, Jessie Skidmore's ex-wife, returned the call and told the prosecutor she had no idea where Jessie Skidmore was. Laura Skidmore thought Jessie Skidmore's mother might know, but she declined to give out the mother's phone number. Coppolino then drove to Jessie Skidmore's last known address in Riverdale, but no one was home. The state could not contact Jessie Skidmore's mother because it did not know her name. The trial court rejected defense counsel's argument that the state should have obtained a current address from Jessie Skidmore during the first trial in the event he was needed again because "[the state] didn't know that there was going to be a next time. . . ."

Prior testimony of a declarant is admissible as an exception to the hearsay rule if the proponent of the testimony proves that the declarant is unavailable.[4] See OCGA § 24-3-10. To prove unavailability, the proponent must show that the declarant could not with due diligence be found in the state. Deciding whether a declarant is unavailable is a matter within the discretion of the trial court and will not be disturbed unless it amounts to an abuse of discretion. *Rivers v. State*, 265 Ga. 694, 696 (5) (461 SE2d 205) (1995). The testimony of Investigator Coppolino was sufficient to establish that Jessie Skidmore was unavailable within the meaning of OCGA § 24-3-10. As the trial court acknowledged, the state could not have known that the first trial would result in a mistrial. The trial court did not abuse its discretion in admitting Jessie Skidmore's testimony from the first trial.

3. Finally, Lowenthal argues that the trial court erred in allowing the 911 dispatcher to testify to what Maples told him when she called to report a drunk driver on the road. The trial court overruled defense counsel's objection, finding that the testimony fell within the res gestae exception to the hearsay rule. On appeal, "a

---

[4] Lowenthal does not challenge the trustworthiness of the testimony.

trial court's determination that evidence is admissible as part of the res gestae will not be disturbed unless that finding is clearly erroneous." (Punctuation omitted.) *Davison v. State*, 241 Ga. App. 685, 687 (3) (527 SE2d 285) (1999), citing *Copeland v. State*, 235 Ga. App. 682, 684 (2) (a) (510 SE2d 124) (1998). Res gestae declarations are those "accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought." OCGA § 24-3-3. In light of their relationship and the events of the evening, Lowenthal argues that Maples had ample time and motive to fabricate the call to 911.[5]

Maples's declarations are substantially contemporaneous with the event. The 911 dispatcher testified that he received a call from a woman who identified herself as Michelle Maples. Maples advised the dispatcher that she was following a drunk driver on Interstate 75. Maples gave the dispatcher the drunk driver's tag number and her cell phone number, and then advised the dispatcher that the driver was exiting the interstate and pulling into a Shoney's parking lot. The dispatcher remained on the phone with Maples until she advised him that a police officer had arrived on the scene. Maples's statements to the dispatcher were corroborated by Jessie Skidmore's testimony. Moreover, there is no evidence that Maples's statements to the 911 dispatcher were the result of afterthought. The trial court did not err in allowing the 911 dispatcher to testify as to Maples's statements.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JANUARY 23, 2004.

▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*Virgil L. Brown & Associates, Larkin M. Lee*, for appellant.
*Charles A. Spahos, Solicitor-General, Jefferson F. Upchurch, Assistant Solicitor-General*, for appellee.

---

[5] During the first trial, Maples testified that she called 911 from Laura Skidmore's cell phone while she was standing outside of her house. Maples denied following Lowenthal, and she denied calling 911 from the car. Maples did not testify at the second trial because the state "[did not want to] make the same mistake of calling her to the stand again." During the first trial, both Maples and Lowenthal testified that they were still together.