## A04A0487. CARTER v. THE STATE.
### (600 SE2d 637)

RUFFIN, Presiding Judge.

A jury found Anthony John Carter guilty of interfering with government property, but acquitted him of obstructing a law enforcement officer. Carter appeals his conviction pro se, raising numerous claims of error, including that he received ineffective assistance of counsel. Although we affirm the judgment of conviction, we remand this case for a hearing on Carter's ineffective assistance claim and for further proceedings on his application for a supersedeas bond.[1]

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence.[2] We neither weigh the evidence nor resolve issues of witness credibility, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.[3]

Viewed in this manner, the evidence shows that, on May 15, 2002, Carter was an inmate at the Fayette County jail. At approximately 8:30 a.m., Deputy Richard Hancock heard Carter banging and kicking on the door of his cell. When Hancock checked the cell, he saw Carter place his foot inside the toilet, which was mounted to the wall and connected to a sink. Carter clogged the toilet, then continuously pressed the flush button, flooding the cell. At Hancock's request, maintenance personnel reduced the toilet's water pressure to stop the flooding. Carter then kicked the toilet-sink unit, which fell from the cell wall, leaving a hole in the wall.

Under OCGA § 16-7-24 (a), "[a] person commits the offense of interference with government property when he destroys, damages, or defaces government property." The evidence shows that Carter flooded his jail cell and dislodged the toilet-sink unit from the cell

---

[1] Carter's motion to dismiss the State's brief as untimely and to hold the State in contempt is hereby denied.

[2] See *Davis v. State*, 263 Ga. App. 841 (1) (589 SE2d 603) (2003).

[3] See *Bales v. State*, 232 Ga. App. 761, 763 (1) (503 SE2d 607) (1998).

wall. Based on this evidence, the jury was authorized to conclude that Carter damaged government property, in violation of OCGA § 16-7-24 (a).[4]

2. Carter claims that his conviction should be reversed because the State struck African-Americans from the jury pool in violation of *Batson v. Kentucky*.[5] The record shows that, following jury selection, both the prosecution and the defense objected to the jury's composition. The prosecution asserted that the defense had used all of its peremptory strikes to remove women from the jury pool. The defense objected that the prosecution used its strikes to remove three of four African-Americans from the pool. After further discussion, counsel for both sides explicitly waived any *Batson* objection upon reaching an agreement that two jurors originally excluded — a female struck by the defense and an African-American struck by the prosecution — would be seated on the jury. The trial court agreed to this remedy, and the two individuals joined the jury.

The next day, the trial court learned that the African-American juror seated pursuant to the agreement failed to disclose a recent arrest during voir dire. Based on this revelation, the prosecution asked that the juror be removed and replaced with the alternate juror. After hearing evidence, the trial court removed the juror, and defense counsel did not object.

Carter now asserts that this juror's removal "violat[ed] [the] waiver" consented to by the defense. We disagree. The defense and the prosecution agreed to waive *Batson* challenges in exchange for seating two previously stricken jurors. Nothing in the record suggests that the prosecution knew about the removed juror's lack of candor when this agreement was reached or when the jury was impaneled. And the defense did not object to the trial court's decision removing the juror. Under these circumstances, Carter failed to preserve his *Batson* challenge for appellate review.[6]

3. Carter also asserts that several prosecution witnesses gave perjured testimony, requiring reversal. Again, we disagree.

Under Georgia law,

> [a] conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. If the undisclosed

---

[4] See *Davis*, supra at 841-842.

[5] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[6] See *Eason v. State*, 234 Ga. App. 595, 598 (4) (507 SE2d 175) (1998); *Thrasher v. State*, 225 Ga. App. 717, 718 (2) (484 SE2d 755) (1997); see also *Lyons v. State*, 271 Ga. 639, 642 (5) (522 SE2d 225) (1999) (specific *Batson* motion not raised below is waived on appeal).

evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury, such a conviction may require reversal under the above standard.[7]

Carter claims that Deputy Hancock was untruthful at trial when he stated that Carter kicked the toilet-sink unit off the cell wall. Carter asserts that a videotape of the incident, which was played for the jury and admitted into evidence, shows that he did not kick the toilet. The videotape, however, shows no such thing. Although the viewer cannot see the toilet on the tape, the video footage certainly does not demonstrate that Hancock was untruthful in his testimony. Carter also has pointed to no evidence supporting his allegations that various other deputies were untruthful in court proceedings, and he has not shown that the prosecution knew about these alleged untruths. Moreover, Carter does not claim that the prosecution failed to turn over materials or evidence through which he could have established the untruthful nature of this testimony.

The record contains no evidence that the State allowed any witness to give material testimony that it knew or should have known to be false. We recognize that Carter questions the credibility of the State's witnesses. But the jury, not this Court, determines witnesses credibility, and the jurors evidently chose to believe the State's witnesses regarding the interference with government property charge.[8] Accordingly, Carter is not entitled to a reversal based on his perjury allegations.[9]

4. Carter further argues that the trial court erred in allowing jurors to watch the videotape of the incident for a second time after the jury began its deliberations. According to Carter, the trial court should have instructed jurors that they were required to remember the evidence, rather than replaying the videotape.

The record shows that the trial court permitted the jury to watch the videotape in the controlled conditions of the open courtroom, and the defense did not object to this procedure. Under these circumstances, we find no error. As an initial matter, Carter waived any alleged error by failing to object at trial.[10] Furthermore, " 'a trial judge has . . . discretion, upon a jury request made during deliberations, to permit the jury to hear again parts of the evidence previously

---

[7] (Citations omitted.) *Peake v. State*, 247 Ga. App. 374, 376 (2) (545 SE2d 309) (2000).

[8] See *Bales*, supra.

[9] See *Peake*, supra.

[10] See *Quinn v. State*, 253 Ga. App. 570, 572 (2) (560 SE2d 58) (2002).

presented.' "[11] And we have specifically approved a trial court's decision to replay a videotape for the jury under the controlled conditions of the courtroom.[12] Accordingly, the trial court did not abuse its discretion.[13]

5. Carter claims that the trial court erred in entering a judgment of conviction on interference with government property because the jury acquitted him of the "lesser" offense of obstructing an officer. Again, we disagree.

Count 1 of the indictment charged Carter with interfering with government property by kicking the sink off the wall and flooding his jail cell. Count 2 charged him with obstructing an officer "by becoming verbally combative, refusing repeated orders and resisting restraint." Carter has made no effort to argue how the obstruction offense is included, either factually or legally, within the interference with property charge. And a comparison of these two offenses shows that they have entirely different elements and require proof of entirely different facts.[14] Accordingly, neither offense is included within the other.[15]

6. Next, Carter argues that the sentence he received following his conviction was cruel and unusual. The record shows that the trial court sentenced Carter to five years in prison. This sentence falls within the statutory limits set by OCGA § 16-7-24 (a), which provides for imprisonment of "not less than one nor more than five years."

As we have noted,

> [a] presumption arises when a defendant is sentenced within the statutory limits set by the legislature that such sentence does not violate the Eighth Amendment's guarantee against cruel and unusual punishment. Such presumption remains until a defendant sets forth a factual predicate showing that such legislatively authorized punishment was so overly severe or excessive in proportion to the offense as to shock the conscience.[16]

---

[11] *Barnett v. State*, 204 Ga. App. 588 (1) (420 SE2d 96) (1992).

[12] See id. at 589.

[13] See id.

[14] Compare OCGA § 16-7-24 (defining interference with government property) with OCGA § 16-10-24 (defining obstruction of a law enforcement officer).

[15] See OCGA § 16-1-6 (explaining when a crime is included within another crime); *Damare v. State*, 257 Ga. App. 508, 511 (2) (571 SE2d 507) (2002) (defining "lesser included offense").

[16] (Citations and punctuation omitted.) *Hill v. State*, 259 Ga. App. 363, 365-366 (2) (577 SE2d 61) (2003).

Although the trial court imposed a lengthy sentence, the sentence is not so disproportionate to the act as to shock the conscience.[17] And the record does not support Carter's apparent claim that the sentence was retaliatory.[18] Finally, despite Carter's argument to the contrary, *Smith v. State*[19] does not support his novel proposition that, although convicted of a *felony* offense, he should have received a misdemeanor sentence because he committed the offense while in jail for a probation violation.

7. Carter also claims that his conviction must be reversed because the State moved him to a state penitentiary after his conviction, rather than keeping him at the Fayette County jail. Several months after the conviction, and following his transfer to the state penitentiary, Carter requested that he be transferred back to the Fayette County jail and, pursuant to OCGA § 42-5-50 (c), held there pending resolution of his appeal.[20] The record contains no ruling on this motion.

By failing to obtain a ruling on his motion, Carter waived this allegation of error for purposes of appeal.[21] Furthermore, even if the trial court had denied the motion — and assuming such denial constitutes error — Carter would not be entitled to a reversal of his conviction. As we recently noted, "OCGA § 42-5-50 (c) does not provide for reversal of a conviction if a trial court refuses to keep a convicted defendant in the county jail, and we decline to create such a remedy."[22] Finally, Carter has not shown that the results of this appeal would have been different had he been held in the Fayette County jail. Under these circumstances, this enumeration of error lacks merit.[23]

---

[17] See id.; *Brogdon v. State*, 220 Ga. App. 31, 35-36 (6) (467 SE2d 598) (1996).

[18] Cf. *Haygood v. State*, 225 Ga. App. 81, 83-84 (2) (483 SE2d 302) (1997) (imposition of maximum sentence for criminal trespass cruel and unusual where trial court initially offered defendant a choice between 12 months incarceration and payment of a fine plus community service to be completed on probation, but removed choice and sentenced defendant to incarceration when defendant indicated a desire to appeal).

[19] 154 Ga. App. 608, 609 (269 SE2d 100) (1980) (escape conviction must be treated as a misdemeanor when individual escapes from jail while awaiting a probation revocation hearing because "[a] prisoner may be convicted of felonious escape only where his previous confinement is pursuant to a felony or misdemeanor conviction and 'all other escapees must receive misdemeanor punishment' ").

[20] Under OCGA § 42-5-50 (c), a convicted person shall not be transferred to a state correctional institution during the pendency of his appeal if "the attorney for the convicted person . . . file[s] a written request with the court setting forth that the presence of the convicted person is required within the county of the conviction, or incarceration, in order to prepare and prosecute properly the appeal of the conviction."

[21] See *Wright v. State*, 259 Ga. App. 74, 77 (3) (a) (576 SE2d 64) (2003).

[22] *Wilbanks v. State*, 251 Ga. App. 248, 263 (11) (554 SE2d 248) (2001).

[23] See id.

8. Carter argues that the trial court erred in cancelling an August 21, 2003 hearing on his motion to dismiss his attorney and his request for a determination of indigence. The record shows, however, that the trial court held a hearing addressing these very issues on September 25, 2003, with Carter in attendance. We fail to see, and Carter has not argued, how this one-month delay supports reversal of his conviction.

9. Carter further claims that the trial court erred in failing to conduct a pre-sentence hearing in accordance with OCGA § 17-10-2.[24] This assertion is not supported by the record, which demonstrates that the trial court held a pre-sentence hearing, at which both the State and defense were offered the opportunity to present evidence and argument relating to sentencing. Moreover, despite Carter's claims, the trial court is not *required* to order the preparation of a pre-sentence investigation report prior to imposing sentence.[25]

10. Carter contends that the clerk of the superior court failed to transmit the entire record to this Court. He asserts, for example, that various "discovery documents," which purportedly undermine certain trial testimony, are missing from the record. According to Carter, these documents were submitted to the trial court as part of a habeas corpus petition. The record shows, however, that these documents were not admitted as trial exhibits, and we will not now consider them in determining whether the State presented sufficient evidence *at trial* to prove Carter's guilt. Thus, we cannot discern, and Carter has not explained, how their absence from the appellate record has caused him any harm. Similarly, although Carter complains that closing arguments were not transcribed, he has not alleged any error relating to these arguments, and we fail to see any harm from this omission.

" '[I]t is axiomatic that harm as well as error must be shown in order to authorize . . . reversal by this court.' "[26] Since Carter has not demonstrated that these alleged omissions harmed him, this enumeration of error presents no grounds for reversal.

11. Carter claims that his conviction should be reversed because the trial transcript was not filed until seven months after the trial, a delay that he argues violates due process. But, under Georgia law,

> [u]nless it clearly appears that the delay in filing the transcript prevented the presentation of an adequate appeal or

---

[24] In his brief, Carter cites Code 1933, § 27-2503, which is the predecessor to OCGA § 17-10-2.

[25] See OCGA § 42-8-29 ("The superior court *may* require, before imposition of sentence, a presentence investigation and written report in each felony case in which the defendant has entered a plea of guilty or nolo contendere or has been convicted.") (emphasis supplied).

[26] *Cooper v. State*, 258 Ga. App. 825, 830 (4) (575 SE2d 691) (2002).

impaired a defense which would otherwise be available to an appellant where a new trial is ordered due to trial error, an appellant has not suffered prejudice which turns a transcript delay into a violation of due process of law.[27]

Carter has not shown that the seven-month delay impacted his ability to adequately present his appeal or impaired any defense that he might have. Accordingly, the transcript delay does not amount to a denial of due process.[28]

12. Carter also contends that he received ineffective assistance of counsel at trial. He asserts, among other things, that trial counsel failed to call various witnesses, present certain evidence, and move for a new trial. Although it is unclear when Carter took over his own representation and relieved trial counsel of his duties, this *may* be Carter's first opportunity to raise his ineffective assistance allegations.[29] And his claims cannot be resolved by examining the appellate record. Under these circumstances, we must remand this case to the trial court for an evidentiary hearing regarding these allegations.[30]

13. Finally, Carter claims that the trial court erred in refusing to grant him a supersedeas bond during the pendency of this appeal.[31] Under Georgia law,

[w]hen an appeal has been instituted by a convicted defendant after a sentence of imprisonment has been imposed, the question of the appellant's custody pending final decision on appeal should be reviewed and a fresh determination made by the trial court. . . . Release should not be granted unless the court finds that there is no substantial risk the appellant will not appear to answer the judgment following conclusion of the appellate proceedings and that the appellant is not likely

---

[27] *Young v. State*, 245 Ga. App. 684, 687 (4) (538 SE2d 760) (2000).

[28] See id. Carter also claims that he has been denied his right to an expedited appeal under OCGA § 5-6-43 (c). Although the superior court clerk did not explicitly certify that Carter was incarcerated and thus entitled to an expedited appeal, we have expedited our review pursuant to OCGA § 5-6-43 (c).

[29] If Carter voluntarily proceeded pro se at a time when he could have filed a motion for new trial and raised these claims in the trial court, he arguably waived his ineffective assistance claims by failing to do so. See *McBride v. State*, 213 Ga. App. 857-858 (2) (446 SE2d 193) (1994) (physical precedent only). However, because the record does not clearly reveal the status of Carter's representation at the relevant time, we are unable to resolve this waiver issue.

[30] See *Eason v. State*, 261 Ga. App. 221, 223 (3) (582 SE2d 194) (2003).

[31] After filing his notice of appeal, Carter moved this Court, pursuant to Court of Appeals Rule 40 (b), for emergency relief from the trial court's denial of his request for supersedeas bond. Although we rejected Carter's request after concluding that his motion did not meet the requirements for emergency relief under Rule 40 (b), we can see no reason why that denial precludes us from addressing this enumeration of error on the merits.

to commit a serious crime, intimidate witnesses or otherwise interfere with the administration of justice, and that the appeal is not frivolous or taken for delay.[32]

The trial court held a hearing on Carter's request for bond and entered a written order denying the request. The record, however, does not reveal the basis for the trial court's ruling. And although "[a]n affirmative finding entered in the record as to any one of the pertinent . . . factors is sufficient to deny an appeal bond,"[33] we do not know which factor or factors the trial court relied upon in this case, if any. Accordingly, we are unable to determine whether the trial court erred in denying Carter's request for bond.

Because we have remanded this case for further proceedings in connection with Carter's ineffective assistance claim, the issues on appeal have not been finally resolved. Unlike other cases where we have affirmed convictions, we cannot find that the questions surrounding Carter's bond application are moot.[34] Upon remand, therefore, the trial court is directed to revisit Carter's application pursuant to the standard set out above and, if it again determines that the application should be denied, clarify the basis for its denial.[35]

*Judgment affirmed on condition and case remanded with direction. Eldridge and Adams, JJ., concur.*

DECIDED MAY 20, 2004.

Anthony J. Carter, *pro se.*

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney,* for appellee.

---

[32] (Punctuation omitted.) *Williford v. State,* 218 Ga. App. 522, 524 (462 SE2d 632) (1995).

[33] Id. As noted in *Williford,* however, the trial court need not set out in writing the facts supporting its determination. See id. at 523.

[34] Compare *Hunter v. State,* 219 Ga. App. 758, 759 (3) (467 SE2d 2) (1996).

[35] In his enumeration of errors, Carter also claims that he was denied an attorney and denied "pro se." His brief, however, offers no citation of authority or argument relating to this allegation. Pursuant to Court of Appeals Rule 27 (c) (2), this enumeration of error is deemed abandoned. We further note that, in a hearing on September 25, 2003, Carter informed the trial court that he wanted to represent himself, without any assistance from an attorney, and the trial court found that he had freely waived his right to counsel.