## A07A0112. CARAWAY v. THE STATE.
### (649 SE2d 758)

JOHNSON, Presiding Judge.

A jury found Kevin Caraway guilty of driving under the influence of alcohol and possessing an open alcoholic beverage container in his motor vehicle. The trial court sentenced Caraway to serve 12 months in confinement and 12 months on probation, including various conditions. Thereafter, the trial court determined that its imposition of a 12-month sentence for the open container violation exceeded the punishment allowed by law and it vacated all portions of that sentence except for the permissible $200 fine.[1] Caraway appeals, challenging the trial court's refusal to quash part of the accusation, evidentiary rulings by the trial court and the sufficiency of the evidence supporting the judgment of conviction. The challenges are without merit, and we thus affirm Caraway's conviction.

1. On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict. We neither assess the credibility of the witnesses nor weigh the evidence, but instead determine only whether a rational trier of fact could have found each of the elements of the crime proven beyond a reasonable doubt.[2]

The evidence presented at Caraway's trial shows that on March 2, 2004, at about 6:30 in the evening, a police officer was on patrol in the city of Senoia when he saw a woman crying in the parking lot of a gas station. He stopped to check on the woman, who was later identified as Caraway's girlfriend, Vicky Brooks. As the officer spoke with Brooks, he received a call dispatching him to Big Jim's Wing

---

[1] OCGA § 40-6-253 (c) provides that any person who violates the open container law is subject to a fine not to exceed $200.

[2] (Citations omitted.) *Stephens v. State*, 271 Ga. App. 634 (610 SE2d 613) (2005).

Shack, located approximately 50 yards from the gas station, to investigate a complaint of someone driving a dark colored Dodge Ram pickup truck recklessly through the restaurant's parking lot, slinging gravel on other vehicles and the building. The dispatch advised that the driver had left the restaurant and gone north on Georgia Highway 85.

The officer pulled onto the highway and drove the short distance to Big Jim's, where he saw a man, later identified as Caraway, heading southbound on Highway 85 in a dark blue Dodge Ram pickup truck. The officer saw Caraway pull into Big Jim's parking lot, park his truck and go into the restaurant. Once inside, Caraway went into the restroom, came out, went back into the restroom, came out again, and then sat down in a booth.

The officer approached Caraway and asked him to come outside to talk. Caraway did not respond and instead stared at the table. The officer repeated his request, and eventually Caraway stood up and began walking toward the door. The officer smelled a possible odor of alcohol coming from Caraway and he saw Caraway have trouble walking, bumping into tables at which people were sitting and eating.

Once outside, the officer asked Caraway if he had any identification with him. Caraway began fumbling with papers in his wallet, and told the officer he did not have his driver's license with him. As Caraway spoke, the officer smelled an extremely strong odor of alcohol on his breath. Caraway's speech was slurred and he had trouble pronouncing words. His eyes were glassy and bloodshot and his eyelids were almost closed.

Although the officer had seen Caraway drive his truck on the highway and park it in the lot, Caraway told the officer that he had not been driving, and that he did not even have his keys or truck with him because his girlfriend had taken the truck. When the officer pointed out that Caraway's truck was in the parking lot, Caraway said he did not know how it had gotten there. As the officer spoke to him, Caraway became agitated and began clenching his fists.

The officer handcuffed Caraway and put him in the back of his patrol car. A deputy who had arrived at the scene stood beside the car while the officer searched the area. In the men's restroom that Caraway had twice gone into, the officer found Caraway's driver's license and the keys to his truck hidden inside a roll of toilet paper. And inside Caraway's truck, the officer found an open, half-empty can of beer sitting in a cup-holder next to the driver's seat. The officer then drove Caraway to the sheriff's office, where he was read the implied consent notice. Caraway refused to submit to any testing of his blood, breath or urine.

The state introduced evidence of five similar transactions. One similar transaction was a prior DUI arrest that resulted in Caraway's

guilty plea to a reduced charge of reckless driving. Two more similar transactions were Caraway's prior guilty pleas to DUI charges. And the other two similar transactions were Caraway's recent arrests on DUI charges, one which occurred approximately seven weeks before trial and the other which occurred just four days prior to trial.

Having reviewed all the evidence in the light most favorable to the verdict, we conclude there is sufficient evidence from which a rational trier of fact could have found Caraway guilty beyond a reasonable doubt of driving under the influence of alcohol and having an open container of alcohol in his vehicle.[3]

2. Caraway contends the trial court erred in failing to suppress all evidence discovered as a result of his arrest because the officer did not have probable cause to arrest him for driving under the influence of alcohol. The contention is without merit.

> The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility. To arrest a suspect for driving under the influence, an officer need only have knowledge or reasonably trustworthy information sufficient to authorize a prudent person to believe that the suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely.[4]

At the suppression hearing, the officer testified that Brooks had told him that Caraway had kicked her out of his blue Dodge Ram pickup truck and he had then torn out of Big Jim's parking lot, slinging gravel everywhere. As he spoke to Brooks, the officer got the emergency call telling him there was a reckless driver slinging gravel in the parking lot. Thereafter, the officer observed Caraway driving the described truck from the highway into the parking lot, smelled a strong odor of alcohol coming from Caraway's breath, saw that Caraway's eyes were bloodshot and barely open, heard Caraway slur and have difficulty pronouncing his words, and observed Caraway have trouble walking and fumbling with his wallet. In addition, despite the officer having seen Caraway drive his truck into the restaurant parking lot, Caraway claimed he had not been driving and that he did not know how his truck had gotten in the parking lot.

---

[3] See *Hopkins v. State*, 283 Ga. App. 654 (1) (642 SE2d 356) (2007).

[4] (Citation and punctuation omitted.) *Slayton v. State*, 281 Ga. App. 650, 652-653 (1) (637 SE2d 67) (2006).

Based on all the circumstances known to the officer at the time of arrest, we find that he had knowledge sufficient to authorize a prudent person to suspect that Caraway was in control of his truck while under the influence of alcohol to a degree rendering him incapable of driving safely.[5] Because the arrest of Caraway was supported by probable cause, the trial court did not err in denying Caraway's motion to suppress evidence.

3. Caraway argues that the trial court erred in failing to suppress evidence of his refusal to submit to a state-administered breath test because the implied consent notice was not given to him at the time of his arrest, but was given some 80 minutes later at the sheriff's office. It is true that the notice must be given at the time of arrest or at a time as close in proximity to the instant of arrest as the circumstances of the individual case warrant.[6] Here, the arresting officer testified that he did not give the notice at the time he handcuffed Caraway and placed him in the police vehicle because Caraway had become enraged, yelling at his girlfriend who had approached him, and because the officer was investigating the scene, talking to witnesses and dealing with the custody of Caraway's vehicle.

Nevertheless, pretermitting the question of whether the circumstances warranted the officer's delay in giving the implied consent notice is the issue of whether Caraway was harmed by any alleged error in the trial court's failure to suppress evidence of Caraway's refusal. "It is fundamental that harm as well as error must be shown for reversal."[7] Here, the evidence of Caraway's guilt — smelling strongly of alcohol, having trouble walking and speaking, fumbling with his wallet, having a half-empty can of beer in his truck, hiding his keys and license in the bathroom, claiming he had not driven even though the officer had just seen him driving, and the multiple similar transactions — is overwhelming. Under such circumstances, it is highly probable that the evidence of Caraway's refusal did not contribute to the jury's verdict, so even if the trial court improperly allowed such evidence, any error was harmless.[8]

4. We find no error in the trial court's admission of the five similar transactions. First, Caraway contends he was not timely notified of the state's intention to introduce his two recent DUI arrests as similar transactions. While the state did not give ten days notice as required by Uniform Superior Court Rule 31.1, that rule authorizes

---

[5] *Faulkner v. State*, 277 Ga. App. 702, 705-706 (2) (627 SE2d 423) (2006).

[6] *Naik v. State*, 277 Ga. App. 418, 419 (626 SE2d 608) (2006).

[7] (Citation and punctuation omitted.) *Handschuh v. State*, 270 Ga. App. 676, 679 (1) (607 SE2d 899) (2004).

[8] See *Cockrell v. State*, 281 Ga. 536, 538 (2) (640 SE2d 262) (2007).

the trial judge to shorten the time required for giving notice of a similar transaction.[9] "The trial court's exercise of its discretion in this regard is particularly appropriate where the State cannot give notice of its intention to introduce evidence ten days prior to trial because it is not aware of the existence of such evidence at that time."[10]

It is undisputed that the state did not learn of the existence of Caraway's two recent DUI arrests — one of which had occurred just three days earlier — until the day prior to trial. The state immediately contacted Caraway's attorney and gave notice of its intent to use that similar transaction evidence at trial. At the similar transaction hearing the following day, Caraway had the opportunity to challenge the admissibility of such evidence, and his counsel declined offers by the court to continue the case so he could fully investigate the charges. The two witnesses for those similar transactions did not testify at trial until the following day, and Caraway's counsel fully cross-examined them. Under the circumstances, we find that the trial court did not abuse its discretion in shortening the time for the similar transaction notice.[11]

As for the admissibility of all five of Caraway's other arrests or convictions for DUI, the trial court did not err in finding that there was sufficient evidence that Caraway had committed those acts, that there was a proper purpose for such evidence, and that the other acts are sufficiently similar to the instant charges.[12] "[E]vidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so."[13]

5. Because no judgment of conviction was entered on any of the counts of the accusation charging disorderly conduct — the court directed a verdict of acquittal as to one of the counts and the jury found Caraway not guilty of the remaining disorderly conduct counts — Caraway's contention that the trial court erred in failing to quash those counts is moot.[14]

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

---

[9] *Quinn v. State*, 221 Ga. App. 399, 403 (4) (471 SE2d 337) (1996).

[10] (Citations omitted.) Id.

[11] See *Chemielowiec v. State*, 250 Ga. App. 66, 67 (2) (550 SE2d 120) (2001).

[12] See *Lowenthal v. State*, 265 Ga. App. 266, 268 (1) (593 SE2d 726) (2004).

[13] (Citations and punctuation omitted.) Id. at 269 (1).

[14] See *Braley v. State*, 276 Ga. 47, 49 (2) (572 SE2d 583) (2002).

DECIDED JULY 2, 2007 —
RECONSIDERATION DENIED JULY 16, 2007 —

*Virgil L. Brown, T. Robert Perkerson*, for appellant.
*Robert Stokely, Solicitor-General*, for appellee.