**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 25, 2019**

# In the Court of Appeals of Georgia

A19A0744. MAYS v. THE STATE

COOMER, Judge.

After a jury trial, Hope Nicole Mays was convicted of three misdemeanor offenses: disorderly conduct, obstruction of a law enforcement officer, and simple battery on a police officer. On appeal, she argues that the trial court erred in denying her motion for a directed verdict on her disorderly conduct charge and that the trial court also erred by excluding evidence of a voicemail that she left on her stepmother's phone. We agree with Mays that the trial court should have granted her motion for directed verdict on disorderly conduct, and reverse that conviction. We affirm her remaining convictions.

Viewed in the light most favorable to the verdict, the evidence showed that on May 16, 2017, Mays was admitted to the emergency room after complaining of pain.

She was given medication and slept for approximately four hours. Around 2:00 a.m., Mays's attending nurse informed her that she would be discharged. Upon learning she was going to be released, Mays became irate and verbally abusive towards the nurse. She then tore the blood pressure cuff off her arm. She also ripped out her IV and threw it at the nurse, striking him in the leg and splattering blood on the door.

Police were dispatched to the hospital and found Mays outside on a curb. At that time, Mays was in an excited state. She was talking rapidly and yelling racial slurs at the officers. At some point, officers decided to arrest her. They directed her multiple times to stand up and she refused. Officers then grabbed her by the arms in order to stand her up and place her in handcuffs. As they did so, Mays attempted to pull away from the officers. After they finally placed her in handcuffs, Mays kicked one of the officers. They eventually subdued her and placed her in the patrol car.

Mays was charged with disorderly conduct, obstruction of a law enforcement officer, and simple battery on a law enforcement officer. The jury convicted her on all charges and this appeal followed.[1]

---

[1] Immediately after her convictions, Mays filed a notice of appeal, thereby divesting the trial court of jurisdiction. As a result, her subsequent filing of a motion for new trial and proceedings thereafter were null and void. *Peterson v. State*, 274 Ga. 165, 171 (6) (549 SE2d 387) (2001).

1. As an initial matter, we note that Mays filed her brief late and the State moved to dismiss the appeal. Rule 23(a) of this Court provides that the failure to file briefs within the time allowed "*may* result in the dismissal of the appeal. . . ." (emphasis supplied). Although we do not condone Mays's failure to timely file her appellate brief, "this Court is not required to refuse to consider an untimely brief nor hold the late-filing party in contempt." *Roberson v. State*, 335 Ga. App. 606, 607 n.1 (782 SE2d 671) (2016). Despite Mays's late filing, we deny the State's motion to dismiss and will consider her appeal. *See Carter v. State*, 267 Ga. App. 520, 520 n.1 (600 SE2d 637) (2004) (The defendant's "motion to dismiss the State's brief as untimely and to hold the State in contempt is . . . denied.").

2. In her first enumeration, Mays argues that the trial court erred in denying her motion for directed verdict because the State's evidence showed that the medical equipment at risk of being damaged from her actions belonged to the hospital, and not the nurse. We agree with Mays that the State failed to prove each element of the offense.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a

3

rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense.

*Hughes v. State*, 297 Ga. App. 217, 217 (676 SE2d 852) (2009) (footnote omitted).

Mays was charged with violating OCGA § 16-11-39 (a) (2), which provides that "[a] person commits the offense of disorderly conduct when such person . . . [a]cts in a violent or tumultuous manner towards another person whereby the property of such person is placed in danger of being damaged or destroyed."

In count 1 of the accusation, the State alleged that Mays:

did act in a violent and tumultuous manner towards another person, to wit: [attending nurse], whereby the property of another person, to wit: medical equipment, was placed in danger of being damaged, contrary to the laws of said State, the good order, peace and dignity thereof.[2]

---

[2] The indictment sets forth that the State must prove that the "property of *another* person . . . was placed in danger of being damaged," while the statute actually requires the State to show that the "property of *such person* [the alleged victim] is placed in danger of being damaged or destroyed." (emphasis supplied). Mays has not raised the issue of the discrepancy between the indictment and the statute. *See Clark v. State*, 266 Ga. App. 334, 335 (1) (596 SE2d 783) (2004) ("If the indictment was void for any reason, the question should have been raised by demurrer before pleading or by motion in arrest of judgment after conviction." (citations and punctuation omitted)).

Mays argues that under the statute and the indictment, the State was required to show that the medical equipment at risk of being damaged was owned by the nurse, and that the evidence only established that it belonged to the hospital.

The State counters that the nurse testified that his stethoscope, as well as "other items" belonged to him personally, and regardless, actual ownership is irrelevant because the nurse was "responsible" for all the equipment in the room, as it was under his dominion and control.

There was no specific testimony that any equipment personally belonging to the nurse was at risk of being damaged. The record shows that only an IV and blood pressure cuff - both belonging to the hospital - were at risk based on May's behavior.

The question before us is whether the phrase "the property of such person," as used in OCGA § 16-11-39 (a) (2), means property that is merely under the control of the alleged victim. Or, alternatively, did the General Assembly intend the phrase to indicate a greater legal interest in the property by the alleged victim than mere control over it?

"The interpretation of a statute is a question of law, which is reviewed de novo on appeal. A criminal statute must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most

5

favorable to the party facing criminal liability must be adopted." *Jenkins v. State*, 284 Ga. 642, 645 (2) (670 SE2d 425) (2008) (citations and punctuation omitted). In interpreting criminal statutes, we construe them narrowly, which "requires that we read the Code provision in question according to the natural and obvious import of its language." *Prophitt v. State*, 336 Ga. App. 262, 269 (784 SE2d 103) (2016) (citation and punctuation omitted).

A natural reading of the phrase "property of such person" in this context leads us to conclude that in order to prove disorderly conduct under OCGA § 16-11-39 (a) (2), the State must show the victim's interest in the property was more than mere control over the property of someone else.

> The term 'property' is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership, and that which is subject to be owned and enjoyed. The term property comprehends not only the thing possessed, but also, in strict legal parlance, means the right of the owner in relation to land or a thing; the right of a person to possess, use, enjoy, and dispose of it, and the corresponding right to exclude others from the use.

*Bowers v. Fulton County*, 221 Ga. 731, 737 (2) (146 SE2d 884) (1996) (citations and punctuation omitted).

6

While the State did not have to prove the nurse actually owned the property at risk of being damaged, it could have satisfied this element by proof of ownership. As noted, however, the evidence failed to show that any property owned by the nurse was at risk of being damaged. While proof of ownership is not necessarily required, the State did not establish that the hospital granted the nurse any authority to use, enjoy, dispose of, or exclude others from the use of the medical equipment as he saw fit. In short, the evidence only showed that the hospital owned equipment and that the nurse was authorized to use it in order to administer medical care to patients. The hospital's authorization of the nurse to exercise control over its property did not transform said property into "property of [the nurse]." *Compare Ward v. State*, 304 Ga. App. 517, 522 (1) (a) (696 SE2d 471) (2010) (Under our armed robbery statute, "it does not matter exactly whose property was taken so long as it was taken from a 'person or the immediate presence *of another*.' OCGA § 16-8-41." (emphasis supplied)).

Because the State failed to present any evidence that the nurse had more than permission of the owner to exercise control over the medical equipment at risk of being damaged by Mays, we find that the evidence was insufficient to sustain her disorderly conduct conviction. Accordingly, the trial court should have granted her a directed verdict on that count.

3. Mays next argues that the trial court erred when it excluded evidence of a voicemail that she left on her stepmother's phone during her arrest. She contends that the contents of the voicemail would have supported her own testimony at trial that the officer's were acting violently towards her.

We review a trial court's ruling excluding evidence for abuse of discretion. *Cobb v. State*, 302 Ga. App. 821, 825 (3) (692 SE2d 65) (2010).

At trial, May's stepmother was asked on direct examination by defense counsel about the contents of a voicemail she received from Mays around the time she was arrested. Before she could answer, the trial court sustained a hearsay objection by the State. Defense counsel then asked several more related questions, but never elicited what was contained in the voicemail. When Mays testified, she stated that she "didn't say anything [on the voicemail]. That's when they grabbed me and they - when they went to grab me when they put my arms behind my back, this phone was slung across the road there." In a post-trial hearing defense counsel testified that he recalled that the voicemail "contained . . . a woman's voice that seemed to be crying out, something of that nature."

First, we find that Mays failed to make an adequate proffer of the contents of the voicemail. *See Dickey v. Clipper Petroleum, Inc.*, 280 Ga. App. 475, 478-479 (2)

8

(634 SE2d 425) (2006) ("It is the obligation of a party to make a specific tender of evidence which they contend is improperly excluded, and the failure to do so precludes our review of this contention." (citation and punctuation omitted)). Even taking into account the limited proffer made at the post-trial hearing - which is not properly before us - we are unable to discern precisely what was contained on the voicemail, if anything, or how it would have benefitted Mays at trial. Consequently, Mays "has failed to show that the [evidence] would have benefitted [her] or that its rejection was sufficiently prejudicial to warrant a reversal of the convictions." *Fulton v. State*, 205 Ga. App. 353, 354 (2) (422 SE2d 257) (1992) (citation and punctuation omitted).

Moreover, even if we assume that the voicemail contained evidence that the officers were acting violently towards Mays, we fail to see how she was prejudiced by its exclusion. Mays's stepmother testified that after listening to the voicemail, she was angry and scared because she did not know "who was hurting [Mays]." Even under a generous view of May's minimal proffer, the purported contents of the voicemail would have been cumulative of what the jury heard about it. *See Pilcher v. State*, 170 Ga. App. 869, 871 (4) (318 SE2d 640) (1984) ("It is not error to exclude evidence that is merely cumulative of other evidence actually introduced at trial."

9

(citations omitted)). Accordingly, the trial court did not abuse its discretion in excluding the voicemail.

*Judgment affirmed in part and reversed in part. Doyle, P.J., and Markle, J., concur.*